**People of the State of Illinois, Plaintiff-Appellee, v. Willie Joe Calloway, Defendant-Appellant.**

**Gen. No. 49,760.**

First District, Fourth Division.

September 13, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, James J. Doherty and Frederick F. Cohn, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Albert J. Armonda, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

CHARGES.

Armed robbery and attempt (to commit murder).*

---

\* Ill Rev Stats (1963), ch 38.

§ 18–1. Robbery
(a) A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force.

. . . . . .

§ 18–2. Armed Robbery
(a) A person commits armed robbery when he violates Section 18–1 while armed with a dangerous weapon.

. . . . . .

§ 8–4. Attempt
(a) Elements of the Offense.
A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense.

. . . . . .

§ 9–1. Murder
(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another;

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) He is attempting or committing a forcible felony other than voluntary manslaughter.

. . . . . .

420

Defense at Trial
Alibi.

Judgments

A jury verdict on January 17, 1964, found defendant guilty of armed robbery. On February 3, 1964, the court entered judgment on the verdict and sentenced defendant to a term of seven to twelve years.

Also on February 3, 1964, defendant waived a jury as to the charge of attempt to commit murder, stipulated that the evidence in the robbery case be considered as the evidence in the attempt case, and, after a finding of guilty, was given a concurrent sentence of seven to twelve years.

Points Raised on Appeal

(1) The identity of defendant as the perpetrator of the crimes was not proved beyond a reasonable doubt.

(2) The court erred in the giving of an instruction to the jury.

(3) The trial for attempted murder was barred by the mandatory joinder provisions of the Criminal Code.

Evidence on Behalf of the State

*Mary Mayes*

She had worked as a waitress at Phillips Ice Cream Parlor for fifteen years, and on March 13, 1963 was working the hours from 10:00 a. m. to midnight. At 11:40 p. m. two colored men came into the store and she served them some pie. She identified defendant as one of the men. The other man exposed a gun and told her to keep silent or she would get hurt. He then escorted her at gunpoint to the back of the shop and into the kitchen. As they entered the kitchen, her employer, I. P. Phillips, who had been standing by the kitchen window facing the shop, grabbed the man's gun; the gun fired striking Phillips in the wrist. The man called to defendant for help as he and Phillips wrestled on the

421

floor for the gun. Defendant rushed into the kitchen and helped his friend. At this time the witness started to go out when the other man again pointed his gun at her, ordering her forward to the cash register where, still at gunpoint, he took approximately fifteen dollars. Defendant came running out with Phillips' gun in his hand. She identified this gun at the trial, testifying that she had seen it many times before. The two men were in the store about twenty minutes. The store was well lighted. At the time of the robbery defendant had on a short length coat, dark in color, which was similar to one displayed in court by the State's Attorney. (On cross-examination she said she was not sure she had seen the coat before.) Defendant also wore a black bandana on his head at the time of the robbery. She gave the police a description of the man, and later (April 10, 1963) identified defendant in a lineup of four men at the police station. He was wearing a black bandana at the time.

*I. P. Phillips*

He is the proprietor of Phillips Ice Cream Parlor where he and Mrs. Mayes were working at approximately 11:30 p. m. on March 13, 1963. He was in the kitchen attending to closing preparations when he noticed two fellows enter the establishment. They said that they were hungry and Mrs. Mayes served them some food. One of the men was defendant. After observing the men through the peep window of the kitchen for a period of five or six minutes, the witness resumed his cleaning up chores. There followed a period of silence and suddenly the witness heard Mrs. Mayes pleading for her life. In the next instant defendant's accomplice and Mrs. Mayes entered the kitchen and the accomplice announced that this was a "stick up." Phillips slapped his assailant's gun, the gun fired and Phillips was shot, the bullet hitting him in the elbow and lodging in his spine. He fell, and in doing so reached for a revolver which

he kept under his apron. A struggle ensued for possession of that gun, at which point defendant entered the kitchen to assist his friend. Defendant grabbed the gun and, ignoring Phillips' plea for his life, shot him. A blue blaze came from the gun defendant was holding. Phillips had an opportunity to observe defendant's face before he was shot. Defendant wore a dark coat and had a black scarf or bandana on his head at the time of the robbery. The coat submitted in evidence by the State was similar to that worn by defendant at the time Phillips also identified his gun.

On April 10, 1963, the police brought defendant and another man of similar appearance to Phillips' home. At that time he identified defendant as the robber of his store. He identified him first without the bandana on his head and then with the bandana on his head. Phillips described defendant's height and weight and color. He did not identify defendant by any specific facial features but he stated that "I looked right in his face" and "I noticed everything about him." Phillips was at home on April 10, having just gotten out of the hospital. Over a period of six months he had a series of three operations for the injuries he received in the shooting. There were four bullet holes in his intestines.

*Police Officer James Burns*

He arrested defendant on April 10, 1963. The arrest was the result of information from a Mr. Pace that he had observed defendant discard a gun in an alley. The gun was ultimately retrieved. At the time of arrest defendant was wearing a three-quarter length leather coat, a pair of black trousers and a black bandana. Burns did not know what became of the black bandana. Burns confronted defendant with Mr. Pace, and defendant admitted he had put the gun in the alley. Burns then took defendant to the police station where Mrs. Mayes identified him as the robber, picking him out from a lineup of four men all similar in size and race. Later

that same day Burns and his partner, Officer Cozzi, escorted defendant and another youth to the home of Mr. Phillips where the latter also identified defendant as one of the robbers. He identified him first before defendant put on his black bandana and also after he requested that defendant wear the bandana.

(The gun and the coat were admitted into evidence.)

### EVIDENCE ON BEHALF OF DEFENDANT

*Willie Sanders, Catherine Calloway, Johnnie Ash and Flora Beaman.*

Defendant was with them at Sanders' home for the rehearsal of a choir group known as The Christian Harmonizers on March 13, 1963 from about 9:15 p. m. until after midnight. Sanders is defendant's uncle. Catherine Calloway is defendant's mother.

*Willie Joe Johnson*

He paid $25 for the gun submitted into evidence by the State on about March 16, 1963. The purchase was made from a fellow "called by the name of Joe" in a garage located at 13th and Kedzie Streets. The witness loaned the gun to defendant on about April 5, 1963 when the latter asked to borrow it. Defendant had not sold the gun to Johnson. Johnson is defendant's cousin.

*Willie Joe Calloway, defendant*

He denied having committed the robbery, and said that he had never seen Mrs. Mayes before. On March 13, 1963, he was at Sanders' home between the hours of 9:00 p. m. and 1:30 a. m. for a rehearsal of The Christian Harmonizers. The coat in evidence was not his coat but was borrowed by him from Johnnie Ash. The day he was arrested was the first day he had worn the coat. Defendant borrowed the gun in evidence from Willie Joe Johnson on April 6, 1963. He borrowed it for his own protection. On April 7, 1963, he dropped it in an alley when he feared that a "dick's car" cruising the neighborhood might stop him, and he didn't want

to be picked up with a gun on him. The gun was then taken from the alley by someone else. Defendant never wore a bandana nor did he have one in his pocket when he was arrested. At the lineup a policeman furnished the black bandana for him to wear.

REBUTTAL EVIDENCE ON BEHALF OF THE STATE

*Police Officer Robert Cozzi*

He had a conversation with Willie Joe Johnson on April 10, 1963, in which Johnson stated that he bought the gun in evidence from defendant sometime in March of 1963 for $25, and that defendant had previously purchased the gun in a garage at 13th and Kedzie Streets.

At the time of defendant's arrest he was wearing a three-quarter length leather car coat and a black bandana around his head. Defendant had the bandana both at the lineup where he was identified by Mrs. Mayes and at Phillips' home where he was identified by Phillips, but he did not have it on when he went into Phillips' home. He had taken it off voluntarily. At the lineup he had the bandana both on and off. Cozzi didn't know what happened to the bandana.

RE-REBUTTAL EVIDENCE ON BEHALF OF DEFENDANT

*Defendant Calloway*

Officers Burns and Cozzi took defendant and one Marcellus Williamson to Phillips' home on April 9, 1963, at approximately 1:00 p. m. Phillips identified Williamson but could not identify defendant. Then Burns told Phillips that they had traced the gun to defendant and he was supposed to be one of the men in the restaurant. In addition, Burns took a black scarf from his pocket and ordered defendant to put it on. At this point, seeing the black scarf, Phillips identified defendant.

RE-REBUTTAL EVIDENCE ON BEHALF OF THE STATE

*I. P. Phillips*

He identified only defendant on the day the police brought defendant and another person to Phillips' home.

*Police Officer Burns*

When he and Cozzi took defendant and Williamson to Phillips' home, Phillips identified defendant and did not identify Williamson.

OPINION

■ (1) Defendant's contention as to insufficient identification must fail. Both Phillips and Mrs. Mayes had adequate opportunity to observe the robbers before and during the robbery, and their positive identifications of defendant both before and at the trial were essentially unshaken on cross-examination. Their identification of defendant by his physical features was bolstered by further identification of his clothing and of Phillips' gun which was traced to defendant.

■ Defendant points out that Mrs. Mayes' identification of the clothing was weak since there was a question as to its color, that defendant's identification by both witnesses was based on the black bandana which he denied owning, and that neither witness was able to describe specific features of defendant's face. The latter contention has no merit since it has been held that the credibility of identification evidence is not destroyed by failure to describe specifically any particular physical features of a robber. People v. McCall, 29 Ill 2d 292, 295, 194 NE2d 222; People v. Tunstall, 17 Ill2d 160, 163, 161 NE2d 300. The other contentions are said to find support in People v. McGee, 21 Ill2d 440, 444, 173 NE2d 434, in which a conviction was reversed because the identification evidence was considered unsatisfactory. The instant case is clearly distinguishable because both witnesses here had abundant opportunity under favorable conditions to observe the robbers, while the court in McGee noted that none of the identity witnesses there had more than a fleeting view of the offender in poor light. We are satisfied from the record that the identification of defendant in this case was based

on much more than clothing. We are not unmindful of the alibi testimony of defendant's relatives and friends which, if believed, clearly shows defendant's innocence. However, it was for the jury in the trial for robbery and the court in the trial for attempted murder to evaluate all the testimony and determine the credibility of the various witnesses. People v. Donald, 29 Ill 2d 283, 286, 287, 194 NE2d 227; People v. Gray, 24 Ill 2d 229, 232, 181 NE2d 262; People v. Horodecki, 15 Ill 2d 130, 134, 135, 154 NE2d 67. We conclude that the evidence affords ample justification for findings that defendant was guilty of both charges beyond a reasonable doubt.

■ (2) Defendant contends that the State's instruction No. 10 on accomplices or accessories to a crime, given over objection, improperly assumed that defendant was involved in the offense and thereby removed the State's burden of proving that the defendant was so involved. The instruction reads:

> The Court instructs the jury as a matter of law that if two or more persons are engaged in the prosecution of a felony, the acts of each in the prosecution of such felony are binding upon all, and all are alike responsible for the acts of each in the prosecution of such felony.

While an instruction on accountability (Ill Rev Stats (1963), c 38, § 5-2) would have been proper and might well have been given in this case, defendant failed to tender such an instruction. The situation here is similar to that in People v. Carvin, 20 Ill2d 32, 34–36, 169 NE 2d 260, where, over defendant's objection, the jury was given an instruction to the effect that "exclusive possession . . . of stolen property, . . . if unexplained, may of itself raise an inference of guilt of the person having such possession, . . . ." Defendant there complained on appeal that the instruction assumed that the property

was stolen and that it was error not to instruct the jury on the identity of the stolen property. The court concluded:

> If such instructions had been tendered, we think that they might well have been given. . . . Inasmuch as the trial court properly saw fit to give People's instruction No. 3 and the defendant at the time did not request the giving of any instruction which he thought might be required to clarify that instruction there can be found no reversible error in the trial court's failure sua sponte to give instructions which might be explanatory to the challenged instruction. The trial judge has no duty to give instructions on his own motion where defendant does not request them. (People v. Baker, 8 Ill2d 522, 134 NE2d 786.) . . .

An examination of the record here discloses that defendant tendered several instructions, two of which were given by the court. Because none of defendant's instructions was of a nature to cure the alleged defect in the questioned instruction, we think the Carvin case determinative of the issue.

In reaching this conclusion we do not withdraw from the position we have taken in People v. Davis, 74 Ill App2d 450, concerning the responsibility of the court to insure that the jury is instructed as to the elements of the crime charged. We consider the situation in that case to be quite different from the one here presented.

(3) Defendant contends that his prosecution for attempted murder was barred by the mandatory joinder provisions of the Illinois Criminal Code. Ill Rev Stats (1963), c 38, §§ 3–3 and 3–4. Section 3–3 provides:

> (a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

(b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), if they are based on the same act.

(c) When 2 or more offenses are charged as required by Subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately.

Section 3–4 provides in pertinent part:

(b) A prosecution is barred if the defendant was formerly prosecuted for a different offense, or for the same offense based upon different facts, if such former prosecution:

(1) Resulted in either a conviction or an acquittal, and the subsequent prosecution is for an offense of which the defendant could have been convicted on the former prosecution; or was for an offense with which the defendant should have been charged on the former prosecution, as provided in Section 3–3 of this Code (unless the court ordered a separate trial of such charge); or was for an offense which involves the same conduct, *unless each prosecution requires proof of a fact not required on the other prosecution,* or the offense was not consummated when the former trial began; . . . . (Emphasis supplied.)

██ ██ We think it clear that these sections of the statute were not intended to cover the situation in which more than one offense arises from a series of closely related acts such as burglary and robbery, rape and murder, or, as in the case at bar, robbery and attempted

429

murder. (See Committee Comments, SHA, ch 38, § 3–3.) The two crimes are clearly distinct and require different elements of proof. Ill Rev Stats (1963), c 38, §§ 18–1(a), 18–2(a), 8–4(a) and 9–1(a). Separate acts are involved, thus distinguishing the situation here from that which existed in People v. Mullenhoff, 33 Ill2d 445, 211 NE2d 744. That the State was properly permitted to elicit testimony at the robbery trial which later constituted the essential proof at defendant's trial for attempted murder is irrelevant to the mandatory joinder proposition. Proof of such facts was not *required* in the robbery trial, and, in our opinion, section 3–4(b)(1) does not bar the prosecution for attempted murder simply because the evidence happened to be the same. On the contrary, this situation constitutes a specific exception to compulsory joinder by virtue of the clause of the statute emphasized in the quotation above.

DECISION

The judgments and sentences of the Circuit Court are affirmed.

Affirmed.

DRUCKER, P. J. and McCORMICK, J., concur.