THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.*
ELLIOTT THORNTON, Respondent-Appellant.

First District (1st Division)   No. 83—215

Opinion filed December 30, 1983.

Paul Bradley and Ellen R. Domph, both of Chicago, for appellant.

Richard M. Daley, State's Atorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Kip R. Owen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Respondent Elliott Thornton appeals from an order of the circuit court finding respondent in direct criminal contempt of court for refusing to testify at the trial of a codefendant. Respondent was sentenced to a term of six months' incarceration. The sole issue on appeal is whether respondent can be held in contempt of court for refus-

ing to testify at a codefendant's trial by invoking his fifth amendment right against self-incrimination.

Respondent's brief reveals that in February 1982, respondent and Garnett Brooks were arrested and charged with murder, rape, aggravated kidnaping, armed robbery, concealing a homicidal death, armed violence and unlawful use of weapons. Prior to trial the cases of respondent and Brooks were severed and all charges except the murder, rape and aggravated kidnaping were nolled. The record discloses that in October 1982, respondent was tried and acquitted of all the charges against him and in January 1983, Brooks was tried and acquitted of all the charges against him. During the trial of Brooks, respondent was subpoenaed to testify as a State witness. Prior to trial, the court was informed that respondent would assert his fifth-amendment privilege when called to testify. After hearing arguments from the State and from respondent's counsel, the court denied respondent leave to take the fifth amendment. At trial, after respondent gave his name, the following occurred:

"[ASSISTANT STATE'S ATTORNEY]: Elliott Thornton, do you have facts and information—Do you know any facts and information durrounding [sic] the death of Patricia Sutton?

THE WITNESS: I refuse to answer that question that might incriminate me, on the Fifth Amendment.

THE COURT: Take the jury out, please. (Whereupon, the following proceedings were had outside of the presence and hearing of the jury:)

THE COURT: Mr. Thornton, the State asked you a question.

You were sworn under oath and you refused to answer the State's question. Thereby, I will direct you, or order you to answer the State's question.

Will you answer that question?

THE WITNESS: No.

THE COURT: If you do not, after being ordered, I will hold you in contempt of Court, and sentence you to a term in the House of Corrections. Do you understand that?

THE WITNESS: Yes.

THE COURT: Do you still refuse to answer the question, even though you have been ordered to do so?

THE WITNESS: Yeah.

THE COURT: I will hold you in contempt of court.

I sentence you to a term in the House of Corrections for a period of six months.

Prepare the order."

Respondent contends that he could not be found to be in contempt of court for invoking his fifth-amendment privilege and refusing to testify since he was not granted immunity from prosecution. Respondent relies on *United States v. Burr* (C.C. Va. 1807), 25 Fed. Cas. 38, and *Hoffman v. United States* (1951), 341 U.S. 479, 95 L. Ed. 1118, 71 S. Ct. 814, to support his contention that only respondent was able to determine whether or not the testimony sought would have incriminated him. Respondent claims that although he was acquitted of murder, rape and aggravated kidnaping, and could not therefore be prosecuted for those offenses, his testimony could be used in a subsequent criminal prosecution for other offenses to which double jeopardy did not attach. Respondent also rejects the argument that he is protected by the compulsory joinder provisions of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 3—3(b), 3—4(b)(1)) which require that all offenses known to the prosecutor at the commencement of the prosecution be tried in a single proceeding. Respondent claims that had his testimony revealed offenses not known to the prosecutor at the commencement of the prosecution, respondent could have been prosecuted for those offenses and his testimony used against him. Respondent further claims that the statute would not protect him from prosecution for an offense that offended another sovereign. Additionally, respondent cites *People v. Calloway* (1966), 74 Ill. App. 2d 418, 221 N.E.2d 73, to support his contention that the several charges that were nolled prior to trial could be the basis of subsequent prosecution. In *Calloway*, the court found an exception to the compulsory joinder provisions where proof of facts required in one prosecution were different than the proof of facts required in another prosecution. Respondent argues therefore that because the offenses of which he was acquitted, and the ones which were nolled arose from a series of closely related acts which required different elements of proof, the nolled charges could be reinstated. Respondent finally cites the case of *Pillsbury Co. v. Conboy* (1983), 459 U.S. 248, 74 L. Ed. 2d 430 103 S. Ct. 608, in which the Supreme Court held that a witness who was not granted immunity for later testimony, which closely tracked his prior immunized testimony, would not be protected from subsequent prosecution and therefore the witness could not be compelled to testify over his assertion of his fifth-amendment privilege. Respondent argues that based on *Pillsbury Co.*, he should have been allowed to assert the privilege even though double jeopardy barred subsequent prosecution for the offenses of which he was acquitted.

The State counters by asserting that respondent was properly

held in contempt of court for refusing to answer questions concerning the crimes of which respondent had been acquitted. Since respondent could not be prosecuted for those offenses (see Ill. Const. 1970, art. I, sec. 10; *People v. Gray* (1977), 69 Ill. 2d 44, 370 N.E.2d 797), or for lesser included offenses of the crimes of which he was acquitted (*People v. Gray*), respondent cannot claim the privilege. Furthermore, it is the State's contention that the compulsory joinder provisions would bar prosecution for offenses which should have been charged in the first prosecution. The State argues that although the compulsory joinder provisions do not require that all possible offenses be charged, the result of trying only some of the known offenses would bar the State from prosecuting the other offenses. Therefore, the charges that were nolled before trial could not be brought against respondent in a subsequent prosecution. The State claims that since a witness cannot assert a fifth-amendment privilege where the testimony sought cannot be used as a basis for a criminal prosecution against the witness (*Brown v. Walker* (1896), 161 U.S. 591, 40 L. Ed. 819, 16 S. Ct. 644), the privilege was unavailable to respondent. In the alternative, the State argues that even if some of the questions asked of respondent could have implicated him in some other crime, the respondent's blanket assertion of the fifth-amendment privilege was improper. The State contends that it is for the court to determine whether or not under the particular facts there is a real danger of incrimination. (*People v. Mileris* (1981), 103 Ill. App. 3d 589, 431 N.E.2d 1064.) In *Mileris*, the court found that the contemnor's blanket assertion of the privilege, without more, would stymie the truth seeking function of the court by allowing anyone to claim the privilege if they thought they might be subjected to criminal prosecution. Therefore the State argues that the court was correct in directing respondent to answer questions concerning the charges for which he could no longer be prosecuted.

■ It is clear that the protection secured by asserting the fifth-amendment privilege must be confined to those instances where the witness has reasonable cause to suspect the possibility of subsequent prosecution from a direct answer. (*People v. McLaren* (1979), 77 Ill. App. 3d 368, 395 N.E.2d 1219.) The propriety of invoking the privilege is not for the witness alone to decide (*In re Zisook* (1981), 88 Ill. 2d 321, 430 N.E.2d 1037); it is for the court to determine whether the fear of incrimination is well founded. (*In re Zisook*.) The witness is not, however, required to demonstrate that a response would in fact incriminate him. (*People v. McLaren* (1979), 77 Ill. App. 3d 368, 395 N.E.2d 1219.) In *People v. Schultz* (1942), 380 Ill. 539, 544, 44 N.E.2d 601, 603, the court stated the following rule for determining whether

a fifth-amendment privilege may be exercised:

> "[I]t must appear from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is a reasonable ground to apprehend danger to the witness from his being compelled to answer."

Thus, is must be perfectly clear under all of the circumstances that the answers cannot possibly have a tendency to incriminate the party claiming the privilege. *People v. Schultz; People ex rel. Mathis v. Brown* (1976), 44 Ill. App. 3d 783, 258 N.E.2d 1160.

■ In the instant case, respondent invoked the privilege in reply to a question which was clearly very broad in scope. Since respondent was initially charged with seven offenses, four of which were nolled, he could have reasonably feared that he would be incriminating himself by responding to the broad question which was posed. The State suggests two standards by which the trial court was to ascertain whether or not respondent's fear of incrimination was reasonable: The compulsory joinder provisions of sections 3—3(b) and 3—4(b)(1) of the Criminal Code of 1961 and double jeopardy. However, we agree with respondent that neither standard suggested by the State would protect respondent from prosecution for offenses of which the State was unaware at the first prosecution. Moreover, in asserting that respondent should have been required to answer questions relating to the offenses of which he was acquitted, the State fails to offer any standard for determining what would constitute a good-faith effort in answering the State's questions. Nor has the State responded to inquiry as to when respondent's answers would open the door to such an extent as to bar assertion of the privilege. Furthermore, the record indicates that there was not an adequate hearing or determination on the issue as to the possibility of future prosecutions. As noted in *Pillsbury Co. v. Conboy* (1983), 459 U.S. 248, 262, 74 L. Ed. 2d 430, 443, 103 S. Ct. 608, 617, citing *Maness v. Meyers* (1975), 419 U.S. 449, 463, 42 L. Ed. 2d 574, 586, 95 S. Ct. 584, 593, "compelling a witness to testify in 'reliance upon a later objection or motion to suppress would "let the cat out" with no assurance whatever of putting it back.'" It would not necessarily be conjecture to entertain respondent's suggestion that the answers to the State's questions, or explanations as to why they could not be answered, might directly or indirectly implicate respondent in other crimes. (See *People v. McLaren*.) Thus, under the facts and circumstances of this case, the State has failed to convince this court that the two tests proposed, or the authorities cited, are broad enough to preclude all future prosecutions. Further, the State has failed to convince us that respondent acted unreasonably in invok-

ing the privilege. Nor has the State responded satisfactorily to respondent's argument regarding possible prosecution by another sovereign. Accordingly, the judgment of the circuit court is reversed.

Judgment reversed.

BUCKLEY, P.J., and McGLOON, J., concur.