THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES PRATER, Defendant-Appellant.

Fifth District   No. 5—86—0327

Opinion filed July 22, 1987.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Dick Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, James Prater, appeals from an order of the circuit court of Madison County finding him in direct criminal contempt of court for refusing to testify at the trial of a codefendant. Defendant was sentenced to serve a six-month term of imprisonment. After defendant filed his notice of appeal, the trial court modified its original sentence to deny him credit for good behavior. Two issues are presented for our review: (1) whether the trial court erred in ordering defendant to testify and in holding him in contempt for refusing to testify where the State had not offered him a grant of immunity and he had invoked his fifth amendment right against self-incrimination, and (2) whether the trial court had the authority to prevent defendant from receiving credit for good behavior on his sentence for contempt. For the reasons which follow, we affirm in part and reverse in part.

The record before us shows that defendant pleaded guilty to a charge of armed robbery arising from an incident which had taken place on August 5, 1985, at the home of Pete Georgevits. For that crime he was sentenced to an 18-year term of imprisonment. Defendant subsequently moved to have the judgment vacated and for leave to withdraw his plea of guilty, but his motion was denied on March 12, 1986. Defendant did not appeal.

On May 14, 1986, defendant was called as a witness by the State

in the trial of Raymond Moore, his codefendant. A conference was held in the judge's chambers attended by the assistant State's Attorney, counsel for Moore, defendant and his attorney. At that conference the following occurred:

"THE COURT: [I]t's been indicated that—that at least off the record in conversations among lawyers that if called as a witness you do not plan to testify in this case.

DEFENDANT: Right.

THE COURT: Is that correct or not correct?

DEFENDANT: Right.

THE COURT: And why is it?

DEFENDANT: I just don't want to testify. I don't want nothing to do with it. Do my time and get it over with and that's it.

THE COURT: Okay. What is the basis of your refusal, however?

DEFENDANT: Nothing.

THE COURT: When you mean—None, what do you mean?

DEFENDANT: None. I just don't want to testify. I don't have nothing to say.

THE COURT: Okay. Have you conferred with [your attorney] about this? I don't want to know what you—

DEFENDANT: Yes.

\* \* \*

THE COURT: Well, just to clarify you don't want to say—answer any questions at all?

DEFENDANT: No.

THE COURT: When you say no that's not clear. You are saying, no, I don't or, no, I don't—

DEFENDANT: No, I don't.

THE COURT: No, I don't want to answer any questions or what is your response?

DEFENDANT: I don't want to answer no questions. I don't want to testify.

THE COURT: You understand, Mr. Prater, that if you are called as a witness and a question is put to you and you simply refuse to testify particularly if I order you to testify that you could be held in contempt of Court for that conduct?

DEFENDANT: Yes.

THE COURT: You understand that sanctions might be imposed for that conduct?

DEFENDANT: Yes.

THE COURT: And does that change your feeling in any way with regard to whether or not you want to testify?

DEFENDANT: No." ·

Defendant's attorney then suggested to the court that defendant might want to consider the fifth amendment as the basis for his refusal to testify. In response to this suggestion, the court's examination of defendant continued:

"THE COURT: Well, let me ask you this, Mr. Prater. Is—Are you invoking the Fifth Amendment? It's been suggested that it may be applicable. Are you invoking your Fifth Amendment right or not?

DEFENDANT: Yes.

THE COURT: Okay. So that we can take this in perhaps two steps and maybe anticipating what may happen—

DEFENDANT: Yes.

THE COURT: —if you were to invoke as you indicate your—your Fifth Amendment privilege the State might grant immunity to whatever immunity might be applicable in your particular situation. And I can't speak for the State. I don't know what they're going to do in that regard.

If they did grant whatever immunity would be appropriate would you still refuse to testify?

DEFENDANT: Yes."

On the following day, Susan Jensen, the assistant State's Attorney, counsel for Moore, defendant and his attorney once more conferred in chambers. The trial judge then placed defendant under oath, and this exchange took place:

"THE COURT: Okay, Mr. Prater, you indicated yesterday that you did not want to testify and in fact would refuse to testify in this case. Originally as I recall it you indicated that you simply did not want to testify. You wanted to just go back down and serve your time, and then after a little time I think [your attorney] may have said a few words. You indicated that you were also refusing to testify and invoking your Fifth Amendment privilege.

I am restating what occurred yesterday, and I believe that's accurate but if it's not you can correct me.

Am I right on that what I just said?

DEFENDANT: Right.

THE COURT: And what I want to ask you at this time is whether or not you are invoking your Fifth Amendment right not to testify?

DEFENDANT: I refuse to. Fifth Amendment right.

THE COURT: You refuse—

DEFENDANT: —to answer on the ground—

THE COURT: —on the basis of the Fifth Amendment?

DEFENDANT: Right.

THE COURT: Okay.

What I want to do so that we—we are clear about what we are talking about—In other words, as I understand [the assistant State's Attorney's] desire is to ask you questions about the specific incident involved with Mr. Georgevits, and you have obviously entered a guilty plea earlier to that particular charge.

And, Mrs. Jensen [the assistant State's Attorney], if you would so that we know that we are talking about that incident and not about some other incident if you would direct a couple of questions to Mr. Prater with regard to that.

Mr. Prater, if you are going to say that you refuse to testify on the basis of the Fifth Amendment you can make that response, but I want you to know what area she is inquiring about. Okay?

DEFENDANT: (Nods in the affirmative.)

\* \* \*

MS. JENSEN [assistant State's Attorney]: Mr. Prater, directing your attention to August the 5th of 1985 where did you live at that time?

DEFENDANT: I refuse to answer on the grounds of the Fifth Amendment.

MS. JENSEN: At that time that same time period did you know a person by the name of Raymond Moore?

DEFENDANT: I refuse to answer on the grounds of the Fifth Amendment.

MS. JENSEN: And again during that same time period did you know a person by the name of Pete Georgevits?

DEFENDANT: I refuse on the grounds of the Fifth Amendment.

MS. JENSEN: Directing your attention further to August the 5th, 1985, did you have occasion to go over to the residence of Pete Georgevits on Walnut Court with Raymond Moore?

DEFENDANT: I refuse to answer on the grounds of the Fifth Amendment.

THE COURT: I think that's—The indication of that is the area of inquiry that is being made.

I assume your further inquiry would be on the same lines,

Mrs. Jensen, would be relating to this case?

MS. JENSEN: Yes, Your Honor."

After hearing arguments by counsel, the judge advised defendant that he did not have "a valid Fifth Amendment privilege at this stage in these proceedings," and that he would therefore be held in contempt of court if he were ordered to answer questions put to him and refused to do so. The assistant State's Attorney was then directed to continue her examination of defendant. The questioning proceeded as follows:

"MS. JENSEN: Mr. Prater, where were you residing on or about August the 5th, 1985?

DEFENDANT: I refuse to answer.

THE COURT: Okay, Mr. Prater, you are ordered to answer the question posed to you by Mrs. Jensen.

DEFENDANT: I have nothing to say.

THE COURT: Are you refusing to obey that Order?

DEFENDANT: Yes."

The trial court thereupon found defendant to be in contempt of court and sentenced him to a term of six months' imprisonment to be served consecutively with the sentence of 18 years on the armed robbery charge. Defendant promptly filed his notice of appeal. Several days later, the trial court issued another order which specified that defendant was not to receive credit for good behavior against his contempt sentence.

On this appeal, defendant first argues that he should not have been held in contempt for disobeying the trial court's order and refusing to testify because he had invoked his fifth amendment right against self-incrimination and he was never granted immunity from prosecution. Under the circumstances present here, this argument must fail.

■ The fifth amendment provides in part that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." (U.S. Const., amend. V.) Where, however, a witness has pleaded guilty for the offense with respect to which he fears incrimination, sentence has been imposed, no appeal has been taken, and the time for appeal has expired, he will be deemed to have waived his constitutional privilege against compulsory self-incrimination and may be compelled to testify. See *United States v. Pardo* (D.C. Cir. 1980), 636 F.2d 535, 543; *cf. People v. Hartley* (1974), 22 Ill. App. 3d 108, 109-11, 317 N.E.2d 57, 58-59; *People v. Morales* (1981), 102 Ill. App. 3d 900, 904-05, 430 N.E.2d 350, 353.

Consistent with this principle, defendant does not dispute that he

could properly have been compelled to testify, even absent a grant of immunity, regarding matters or transactions which were within the scope of the armed robbery charge to which he had pleaded guilty. As our previous discussion has indicated, defendant's motion to withdraw his plea on that charge had been denied, he had been sentenced, he had filed no appeal, and the time for appeal had passed before he was ever brought to court to give evidence against his codefendant. Defendant argues that the contempt order here should nevertheless be reversed because if he had obeyed the trial court and responded to the assistant State's Attorney's questions, he may have implicated himself in additional crimes unrelated to the armed robbery charge for which he could still be prosecuted.

■ We agree that a witness who has pleaded guilty does not lose his fifth amendment right to refuse to testify concerning other matters or transactions not included in his plea arrangement. As one court has noted:

"[T]he waiver of privilege to be inferred from the guilty plea is only for purposes related to a determination of guilt or innocence of the crime admitted. Pleading guilty to a crime does not waive the privilege not to incriminate oneself at other times in other crimes, any more than conviction of one crime erases the privilege as it relates to others [citations omitted]." *United States v. Pardo* (D.C. Cir. 1980), 636 F.2d 535, 544, quoting *United States v. Johnson* (1st Cir. 1973), 488 F.2d 1206, 1209.

Accordingly, defendant is correct that he could not be compelled to testify concerning any matters which would tend to incriminate him and which were outside the scope of the charge to which he had pleaded guilty (636 F.2d 535, 544) unless he had first been granted immunity in accordance with sections 106—1 and 106—2 of our Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, pars. 106—1, 106—2). See *People ex rel. Kunce v. Hogan* (1976), 37 Ill. App. 3d 673, 678, 346 N.E.2d 456, 462, *aff'd in part, rev'd in part* (1977), 67 Ill. 2d 55, 364 N.E.2d 50, *cert. denied* (1978), 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750.

■ What defendant fails to fully comprehend is that the protection secured by invoking the fifth amendment must be confined to those instances where the witness has reasonable cause to suspect the possibility of subsequent prosecution from a direct answer. (*People v. Thornton* (1983), 120 Ill. App. 3d 983, 986, 458 N.E.2d 1150, 1153.) A witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself. That is, "his say-so

does not of itself establish the hazard of incrimination." (*Hoffman v. United States* (1951), 341 U.S. 479, 486, 95 L. Ed. 1118, 1124, 71 S. Ct. 814, 818.) Whether a witness' silence is justified is, instead, for the court to determine. 341 U.S. 479, 486, 95 L. Ed. 1118, 1124, 71 S. Ct. 814, 818.

Of course, a witness is not required to prove that the response would, in fact, incriminate him. (*People v. Thornton* (1983), 120 Ill. App. 3d 983, 986, 458 N.E.2d 1150, 1153.) " 'To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.' " (*United States v. Kimberlin* (7th Cir. 1986), 805 F.2d 210, 237, quoting *Hoffman v. United States* (1951), 341 U.S. 479, 95 L. Ed. 1118, 71 S. Ct. 814, 818.) A court may, however, require a witness to respond to questions where it is perfectly clear from a careful consideration of all the circumstances in the case that the witness is mistaken and that the answers cannot possibly have a tendency to incriminate him. (*Cf. Hoffman v. United States* (1951), 341 U.S. 479, 488, 95 L. Ed. 1118, 1125, 71 S. Ct. 814, 819; *People v. Thornton* (1983), 120 Ill. App. 3d 983, 987, 458 N.E.2d 1150, 1153.) We believe this to be such a case.

■ As we have shown, the specific questions which defendant was asked concerned the crime to which he had already pleaded guilty, and the assistant State's Attorney represented to the court that all of her questions would be limited to the circumstances of that same crime. (Compare *People v. Goodwin* (1986), 148 Ill. App. 3d 56, 499 N.E.2d 119 (record insufficient to show what defendants would be asked at trial or whether the testimony which the State would have attempted to elicit from them would have related exclusively to the incident and charge for which they had already been convicted).) Based upon our review of the entire record, we have found no conceivable basis upon which defendant could possibly have feared that his answers to those questions might subject him to further criminal sanctions. Indeed, we think it apparent that defendant's blanket refusal to answer was motivated not by any reasonable apprehension that his responses might result in subsequent prosecution, but rather by a simple desire not to be involved in his codefendant's trial. The circuit court therefore did not err in holding him in contempt.

Defendant argues, in the alternative, that the circuit court exceeded its authority when it ordered that he was not to receive any credit for good behavior on his contempt sentence. This point has now been conceded by the State. Accordingly, to the extent that the circuit

court's judgment purports to render defendant ineligible for credit for good behavior on his sentence for contempt, that judgment is reversed. In all other respects, the judgment is affirmed.

Affirmed in part and reversed in part.

KARNS, P.J., and WELCH, J., concur.