NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 190915-U

NO. 4-19-0915

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 12, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| ANTONIO D. SIBLEY, | ) | No. 13CF553 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

_____

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding (1) the trial court did not err by
dismissing defendant's postconviction petition at the second stage of proceedings,
and (2) postconviction counsel provided reasonable assistance.

¶ 2        In July 2018, defendant, Antonio D. Sibley, filed a *pro se* postconviction petition,
which advanced to second-stage proceedings after 90 days. In April 2019, the State filed a
motion to dismiss defendant's postconviction petition. In December 2019, the trial court granted
the State's motion to dismiss the postconviction petition.

¶ 3        Defendant appeals, arguing (1) the postconviction petition made a substantial
showing of actual innocence and (2) postconviction counsel provided unreasonable assistance.
Following our initial disposition in this matter, defendant filed a petition for rehearing on
defendant's claim of actual innocence. We allowed the petition for rehearing, and for the
following reasons, we affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5          Following an April 29, 2013, shooting, the State charged defendant, Antonio D.

Sibley, with aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2012)), unlawful

possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)), and aggravated unlawful

use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2012)).

¶ 6                                      A. Jury Trial

¶ 7          In January 2014, the matter proceeded to trial, where the jury heard the following

evidence.

¶ 8                                     1. *Rose Morgan*

¶ 9          Rose Morgan testified that, on April 29, 2013, at approximately 6:20 p.m., she

was sitting in front of her neighbor's house on Union Street in Decatur, Illinois. According to

Morgan, a light-colored car pulled up and a person got out of the back seat. Morgan testified the

person kneeled and shot a firearm down the street. Morgan saw only the shooter's profile and

could not otherwise identify him.

¶ 10                                   2. *Brian Sheppard*

¶ 11         Brian Sheppard testified he lived at 1364 North Union Street and he heard gunfire

down the street on April 29, 2013. Sheppard looked out his window and observed someone get

out of a vehicle in front of Sheppard's house. The individual began shooting a firearm.

Sheppard believed the vehicle was white. Sheppard took a photograph as the shooter reentered

the vehicle. The photograph depicts an individual getting into the rear passenger side seat of a

white vehicle. Sheppard could not identify the shooter because he only saw the back of the

man's head.

¶ 12                                   3. *Patrol Officers*

¶ 13        Andrew Wittmer, a patrol officer for the City of Decatur, testified that, on April 29, 2013, he received a report of shots fired near 1300 North Union. According to Andrew Wittmer, he responded to the call and observed a white vehicle leaving the area "at an extremely high rate of speed." Andrew Wittmer turned around to try to catch up to the vehicle. According to Andrew Wittmer, officers located the vehicle in a nearby alley. Andrew Wittmer stopped one suspect, Dana Bond, as he walked away from the vehicle. Officer Christopher Skalon, a police officer assigned to a two-man unit with Andrew Wittmer, testified to substantially the same events. According to Skalon, the white vehicle had three doors open when the officers located the vehicle in the alley.

¶ 14                                      4. *Stephen Flesh*

¶ 15        Stephen Flesh testified he lived at 1754 North Church Street and, on April 29, 2013, he thought he heard gunfire. Flesh observed a sedan go by with a police car behind it. The sedan went into an alley and came to a stop. Flesh "heard officers yelling because the car doors [were] flung open and they were telling someone to get on the ground." Flesh saw a black male with long braids, wearing a blue plaid shirt, with pants down to his knees, and tennis shoes. According to Flesh, this individual was "creeping along a privacy fence that's two doors from [his] home." Flesh testified he could not identify anyone from the vehicle or the person in the blue plaid shirt.

¶ 16                                      5. *Ben Massey*

¶ 17        Ben Massey, a detective with the City of Decatur, testified he processed the crime scene at the 1300 block of North Union Street. Massey found two separate groupings of shell casings in the road. In one grouping, Massey found two 9-millimeter shell casings and a 9-millimeter live round. In the other, Massey found seven .25-caliber casings.

¶ 18                                6. *Timothy Wittmer*

¶ 19        Officer Timothy Wittmer testified he interviewed defendant on May 17, 2013. According to Timothy Wittmer, defendant waived his *Miranda* rights and agreed to speak about the April 29, 2013, shooting.  Defendant stated Rajiv Rice and Devante Hill were throwing currency in the air to show off.  Defendant told Timothy Wittmer that Rice fired at him and that defendant fired back at Rice with two rounds from a handgun.  Defendant said the handgun was in the vehicle and would not give Timothy Wittmer "a very clear answer as to who had put it there or where it had come from."  Defendant then fled the scene in a vehicle with Dana Bond and Kadaris Britt.  Defendant positively identified Rice during a photographic lineup.  According to Timothy Wittmer, defendant's version of events was consistent with the sounds of gunfire police heard and the spent casings recovered at the scene.

¶ 20        In rebuttal, Timothy Wittmer testified defendant did not exhibit any signs of being under the influence.  According to Timothy Wittmer, he did not pressure defendant to make a statement during the interview.

¶ 21                                7. *Ed Culp*

¶ 22        Ed Culp, an investigator with the state's attorney's office, met with defendant on July 30, 2013, at defendant's request.  Defendant told Culp he was a passenger in a vehicle with Bond and Britt traveling north on Union Street when they encountered a van blocking their way. People defendant recognized as Rice and Hill emerged on the street.  Rice threw some money in the air, and defendant responded, "we're not about that bullshit."

¶ 23        Defendant told Culp it appeared Rice and Hill were going to allow the vehicle defendant was in to pass.  Defendant was partially out of the vehicle he was in when the vehicle began to move, and he saw Rice pull out a gun.  Defendant told Culp he saw a gun on the

floorboard of the back seat that he grabbed to defend himself. Defendant "cocked" the gun and fired two rounds toward Rice. According to Culp, defendant meant he "jacked the slide of a semi-automatic pistol," which would cause a live round in the chamber to eject.

¶ 24 After defendant fired shots at Rice, he got back into the vehicle and sped away. Initially, defendant said he dropped the weapon at the scene. Culp knew the police response was immediate and that no weapons were found at the scene, so he advised defendant he did not believe the story about leaving the weapon at the scene. Defendant then told Culp he threw the weapon out of the vehicle window into a field. Defendant initially told Culp he had never seen the weapon before and grabbed it from the back seat. Defendant revised his story and told Culp he began carrying the weapon the week before, after a verbal altercation with Rice. Defendant wrote a written statement in which he admitted he fired shots at Rice.

¶ 25 In September 2013, Culp met with defendant again because defendant signed an affidavit claiming no involvement in the shooting and that no one had possessed or fired a weapon. Defendant told Culp his earlier statement was not truthful and he was "taking the fall" for Britt and Bond. Defendant's affidavit averred he mistakenly identified Rice as the shooter or as a person in possession of a weapon. He further averred Rice "did not have a firearm or discharge a firearm on the night in question." The day after defendant signed his affidavit, Rice—who was charged in connection with the shooting—signed an affidavit averring "I did not see [defendant] as one of the shooters, or as a person with a gun on the night in question."

¶ 26                                     8. *Defendant*

¶ 27 Before the State rested, the parties stipulated that, as of April 29, 2013, defendant had a prior conviction of a Class 2 or higher forcible felony from July 2011. Defendant testified he was present on North Union Street in a vehicle with Britt and Bond at the time of the

shooting. According to defendant, he was in the back seat of the vehicle driven by Britt when they saw a van blocking the street. Defendant saw Hill exit the van and go speak to Rice. After a couple minutes, defendant exited the vehicle on the passenger side and told Rice to allow them to pass. Defendant testified, "And, well, they waited a couple minutes and [Rice] told them, [']okay, let them through.['] Then that's when Devante Hill went back to the van and they started to leave. And as they started to leave, gunshots were fired."

¶ 28 According to defendant, he got back into the car when he heard gunshots and they sped away from the scene. When the car stopped, defendant jumped out and ran because he thought there was a warrant for his arrest. Defendant denied firing a weapon, seeing a gun in the car, or seeing a gun being thrown from the car. Defendant stated he next spoke to police following a traffic stop in May 2013.

¶ 29 Defendant testified that during his May 2013 interview, he told the officer that he (defendant) was high. Defendant admitted to telling the officer he possessed and fired a weapon during the April 2013 incident. Defendant testified he initially lied to Culp because he had already lied to another officer and did not want to face obstruction of justice charges.

¶ 30 Defendant identified himself in the photograph Sheppard took of the white vehicle involved in the shooting. Defendant testified the photograph depicted him in the process of getting back into the white car. Defendant told Culp he had a 9-millimeter handgun during the shooting because he already heard on the streets the caliber of weapon involved. Defendant further testified he lied to Timothy Wittmer during his May 2013 interview because he was high on cannabis and Xanax. According to defendant, he lied to Culp about possessing a firearm because of a prior altercation with Rice. Defendant further denied seeing Rice flash money prior

to the shooting. Defendant acknowledged he fled the scene because he heard shots on April 29, 2013.

¶ 31                    B. Verdict, Sentencing, and Posttrial Proceedings

¶ 32        In January 2014, a jury found defendant guilty of aggravated discharge of a firearm and unlawful possession of a weapon by a felon. The trial court sentenced defendant to concurrent terms of 18 years' imprisonment for aggravated discharge of a firearm, 5 years' imprisonment for unlawful possession of a weapon by a felon, and a 2-year term of mandatory supervised release. In August 2015, the court held a hearing on defendant's second amended motion for reduction of sentence. At the hearing, Rice testified he did not see defendant shoot or possess a firearm on the day of the incident. Rice described the shooter as "bald headed" and defendant was not "bald headed." Timothy Wittmer testified Rice accused defendant and Bond of displaying and firing handguns. The court denied defendant's motion to reduce his sentence. Defendant filed a direct appeal, and this court affirmed his convictions in all aspects other than vacating several fines and fees. *People v. Sibley*, 2017 IL App (4th) 150725-U.

¶ 33                    C. Postconviction Petition Proceedings

¶ 34        In July 2018, defendant filed a postconviction petition alleging ineffective assistance of trial counsel and appellate counsel based on the lack of jury instructions on necessity and self-defense. Defendant alleged trial counsel failed to call Rice as a witness and failed to use the August 2013 affidavit from Rice to corroborate defendant's testimony that he did not fire a weapon at Rice. The petition further alleged the evidence was "readily available." Finally, the petition alleged actual innocence based on Rice's affidavit and testimony at the hearing on defendant's motion to reduce his sentence. Defendant attached Rice's affidavit, his

own affidavit stating counsel did not discuss affirmative defenses with him, and a transcript of Rice's testimony.

¶ 35　　　　Defendant's appointed attorney, David Ellison, filed an Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate certifying he had "examined the record of the proceedings at the plea of guilty and the report of proceedings in the sentencing hearing." Ellison filed a second affidavit from Rice in support of defendant's postconviction petition. In the new affidavit, Rice stated he previously told several people, including the police, that he did not know who was shooting on the day of the incident. Rice further stated he "really did know it was Tigger also known as Brad from 54th and Justine in Chicago, IL." Rice claimed he did not provide the information sooner because he feared for his son's mother. Ellison did not file an amended postconviction petition.

¶ 36　　　　The petition advanced to the second stage after 90 days, and the State filed a motion to dismiss. The State argued the selection of defense was trial strategy and the jury could have found defendant was the aggressor. The State noted Rice was charged for his role in the same incident and his case was not resolved until October 2014. The motion to dismiss argued neither of Rice's affidavits indicated he would have waived his privilege against self-incrimination. The State asserted Rice's affidavits were not newly discovered or of such conclusive character that it would probably change the outcome on retrial.

¶ 37　　　　Ellison informed the trial court that he wanted to file an amended petition "to include some additional things that were not in the original petition." Ellison filed an affidavit from Britt, stating he would testify at a trial or hearing that he did not see defendant possess or fire a gun. Ellison also filed an additional affidavit from defendant, stating trial counsel knew of Rice's statement that defendant did not shoot a handgun and did not discuss self-defense with

defendant. Ellison filed a second Rule 651(c) certificate certifying "he examined the [r]ecord of [p]roceedings at the [p]etitioner's trial."

¶ 38    At the hearing on the State's motion to dismiss defendant's postconviction petition, Ellison asserted it was unknown whether Rice would have asserted his privilege against self-incrimination if called as a witness. The trial court rejected defendant's claims of ineffective assistance based on trial strategy and lack of prejudice. The court found Rice's affidavit and testimony would not have had any effect on the case, particularly in light of the prior contradictory statement to Timothy Wittmer. As to the claim of actual innocence, the court concluded Rice's affidavit and testimony was not newly discovered evidence and was not of such conclusive character that it would probably change the result on retrial. The court further found Britt's affidavit was unreliable and would not change the results of the trial. The court granted the State's motion to dismiss defendant's postconviction petition.

¶ 39    This appeal followed.

¶ 40                            II. ANALYSIS

¶ 41    On appeal, defendant argues (1) the postconviction petition made a substantial showing of actual innocence and (2) postconviction counsel provided unreasonable assistance. For the following reasons, we affirm the trial court's judgment.

¶ 42                    A. Substantial Showing of Actual Innocence

¶ 43    The Post-Conviction Hearing Act (Act) allows a criminal defendant to raise a claim his conviction resulted from a substantial violation of his constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2018). We review the dismissal of a postconviction petition without an evidentiary hearing *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31, 47 N.E.3d 237. "The question raised in an appeal from an order dismissing a postconviction petition at the second

stage is whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act." *Id.* "[T]o advance to the third stage of postconviction proceedings based upon a claim of actual innocence, a petitioner must show that the evidence is newly discovered, material and not merely cumulative, and of such conclusive character that it would probably change the result on retrial." *Id.* ¶ 46.

¶ 44   Newly discovered evidence is evidence that was discovered after the trial and that the defendant could not have discovered earlier through the exercise of due diligence. *People v. Coleman*, 2013 IL 113307, ¶ 96, 996 N.E.2d 617. Evidence is material if it is relevant and probative of the defendant's innocence. *Id.* "Noncumulative means the evidence adds to what the jury heard." *Id.* The most important element of an actual innocence claim is the conclusiveness of the new evidence. *Sanders*, 2016 IL 118123, ¶ 47.

¶ 45   Defendant argues Britt's affidavit and Rice's affidavit constitute newly discovered material evidence of such a conclusive nature it would probably change the result on retrial because no witness identified defendant as the shooter and no forensic evidence proved he was the shooter. The State argues the newly discovered evidence is not of such conclusive character that it would probably change the result on retrial. We agree with the State.

¶ 46   Here, two eyewitnesses saw a man shoot a gun and defendant's own trial testimony identified himself as that person. Sheppard took a photograph of the shooter as he was reentering a vehicle, and defendant identified that person as himself during his trial testimony. Although defendant denied being the shooter during his trial testimony, he acknowledged that he told police he was the shooter. Both Timothy Wittmer and Culp testified defendant confessed on more than one occasion to being the shooter and he signed a written confession. Police

corroborated details in defendant's incriminating statements, including the caliber of the weapon, the live round, and the spent casings.

¶ 47        Although defendant subsequently denied being the shooter, his August 2013 affidavit also recanted his statement that Rice was involved in the shooting.  In an affidavit filed the next day, Rice recanted his statement that defendant was the shooter.  Rice's 2018 affidavit is arguably cumulative evidence.  However, even if we assume Rice's 2018 affidavit is not cumulative because it contains additional details (such as Rice's statement that "Tigger" was the shooter), its effect is lessened by the self-serving affidavits filed by Rice and defendant in August 2013.  Britt's affidavit likewise is not of such a conclusive character that it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt.

¶ 48        Defendant essentially asks this court to find it is more likely than not that a jury would choose to entirely disregard defendant's detailed confessions and acquit defendant had the jury heard Britt and Rice testify they did not see defendant shoot a firearm. *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 67, 52 N.E.3d 531 ("[E]ven if the jury were presented with such conflicting evidence, it could easily conclude that the defendant's detailed, self-incriminating statements were entitled to more weight and (along with the other trial evidence) supported a finding of guilt.").  Again, defendant confessed on separate occasions to Timothy Wittmer and Culp, and he signed a written confession.  Specifically, defendant stated he grabbed a 9-millimeter handgun from the back seat of the vehicle, "cocked" the weapon, and fired twice. When defendant "cocked" the weapon, it discharged a live round from the chamber, which was consistent with the single live round and two spent casings the police recovered from the scene, all of which were from a 9-millimeter handgun.  Moreover, defendant identified himself as the man getting back into the vehicle in the photograph Sheppard took.  No other individual was

depicted in that photograph, and Sheppard testified the man getting into the vehicle was the shooter.

¶ 49        Defendant argues the State's reliance on *Wideman* is misplaced because (1) a witness testified at trial to seeing the defendant and later identified the defendant in a lineup and (2) the defendant in that case never repudiated his inculpatory statement. Defendant ignores the fact that the newly discovered evidence in *Wideman* was a recantation of the witness's identification of the defendant and contrary to defendant's inculpatory statements. *Id.* ¶ 66. The court in *Wideman* noted a jury could still have found defendant guilty even in light of the newly discovered evidence given defendant's incriminating statements. *Id.* ¶ 67.

¶ 50        As noted above, defendant filed a petition for rehearing after this court's initial disposition in this case. In the petition for rehearing, defendant relied on the supreme court's decision in *People v. Robinson*, 2020 IL 123849, 181 N.E.3d 37, and this court's opinion in *People v. Brooks*, 2021 IL App (4th) 200573. We granted the petition for rehearing. Following briefing on the petition for rehearing and for the reasons discussed below, we affirm the trial court's judgment.

¶ 51        Defendant asserts the reasoning in *Wideman* is suspect given the supreme court's ruling in *Robinson*, 2020 IL 123849, ¶ 57. In *Robinson*, the defendant and two codefendants were convicted of first degree murder. *Id.* ¶¶ 15-17. At trial, the State called two witnesses who testified they were stopped at an intersection facing a viaduct and they "observed two people standing over a person who was sitting on the ground against a car when a third person exited the vehicle and shot the person on the ground." *Id.* ¶ 8. The State also presented a lengthy signed confession from the defendant. *Id.* ¶¶ 14-15. Additionally, the State called witnesses to whom defendant had allegedly confessed, including a witness named Leonard Tucker. *Id.* ¶¶ 9-10. No

eyewitnesses identified the defendant as the shooter, and the State did not present any physical evidence directly linking the defendant to the crime. *Id.* ¶ 16. After his conviction and sentences were affirmed on direct appeal, the defendant filed a postconviction petition, which was dismissed at the second stage of proceedings. *Id.* ¶ 20.

¶ 52        The defendant subsequently filed a motion for leave to file a successive postconviction petition, alleging actual innocence. *Id.* ¶ 21. The defendant claimed he had no involvement in the murder and that Tucker, a fellow gang member, had committed the murder. *Id.* ¶¶ 21-23. In support of the petition, the defendant attached affidavits from multiple witnesses who observed Tucker in the vicinity of the murder on the night in question, including one who averred he observed Tucker exit a car on the viaduct with two other men while holding an "A.K." and another who averred Tucker confessed to the killing. *Id.* ¶¶ 25, 28. The trial court denied the defendant's request for leave to file a successive postconviction petition, and the appellate court affirmed. *Id.* ¶¶ 30, 33.

¶ 53        The defendant next filed a petition for leave to appeal, which the supreme court allowed. *Id.* ¶ 34. The supreme court reversed and remanded the cause for second-stage postconviction proceedings, concluding the defendant stated an arguable claim of actual innocence. *Id.* ¶ 83. The supreme court noted the appellate court erroneously "believed that the evidence in the supporting affidavits was positively rebutted simply because it was contradicted by the evidence presented at trial." *Id.* ¶ 60. The supreme court clarified, stating "the well-pleaded allegations in the petition and supporting documents will be accepted as true unless it is affirmatively demonstrated by the record that a trier of fact could never accept their veracity." *Id.* In concluding the defendant presented an arguable claim of innocence, the supreme court noted "no physical or forensic evidence linked [the defendant] to the crimes, and no eyewitness

identified him as being involved or even present at the time of the relevant events." *Id.* ¶ 82. Rather, the only evidence supporting the defendant's guilt was his own confession and testimony that the defendant had allegedly confessed to others. *Id.*

¶ 54 Here, we conclude the newly discovered evidence is not of such a conclusive character that it is more likely than not that no reasonable juror would find defendant guilty beyond a reasonable doubt. Unlike *Robinson*, the record here shows no trier of fact could ever accept the truth of Rice's and Britt's affidavits. First, the record shows defendant was in a vehicle with Britt and Bond when they encountered Rice and Hill blocking the street with their vehicle. Nothing in the record shows a sixth person—the "Tigger" that Rice identified in his affidavit—was present at the scene. Further distinguishing *Robinson*, there was more evidence supporting defendant's guilt than defendant's own confession and testimony that he confessed to others. The spent casings and live round recovered at the scene corroborated defendant's account of the shooting in his confessions. Additionally, Sheppard took a photograph of a man entering a white vehicle and identified the man as the shooter. At trial, defendant identified himself as the man in the photograph. As noted, defendant's confession and testimony that he confessed to others was not the only evidence supporting his guilt, but the evidence at trial did include two officers who testified defendant confessed to the shooting and defendant signed a written confession. Under these circumstances, we conclude the record affirmatively demonstrates that a trier of fact could never accept the veracity of the affidavits from Britt and Rice. Accordingly, the trial court properly dismissed defendant's postconviction petition at the second stage of proceedings. Because we affirm the trial court's judgment on the basis that the newly discovered evidence was not sufficiently conclusive, we need not address defendant's

- 14 -

argument that the court improperly made credibility determinations at the second stage of proceedings.

¶ 55                    B. Unreasonable Assistance of Postconviction Counsel

¶ 56        Defendant next argues his postconviction counsel provided unreasonable assistance by failing to amend the *pro se* postconviction petition.  Defendant asserts the record rebuts the presumption of compliance with Rule 651(c) created by counsel's certificate.

¶ 57        Rule 651(c) requires postconviction counsel to certify that she or he "has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions."  Ill. S. Ct. R. 651(c) (eff. July 1, 2017).  Defendant asserts this court should consider the initial certificate filed by counsel in March 2019, where he asserted he had "examined the record of the proceedings at the plea of guilty and the report of proceedings in the sentencing hearing."  Of course, in this case, there was no guilty plea.  Defendant fails to cite any authority for his position that this constitutes unreasonable assistance where counsel later filed a second Rule 651(c) certificate certifying "he examined the [r]ecord of [p]roceedings at the [p]etitioner's trial."  We see no reason to disregard counsel's second Rule 651(c) certificate where counsel certified he examined the transcript of trial proceedings, considered the outcome of defendant's direct appeal, and filed two additional affidavits to support the claims raised in defendant's *pro se* postconviction petition.  Whatever deficiencies the original certificate might have, there is a superseding certificate that carries the presumption of reasonable assistance, which this court will not disregard.  *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19, 974 N.E.2d 813.

¶ 58        Defendant further asserts postconviction counsel provided unreasonable assistance because he failed to "ensure that it was crystal clear to the circuit court that Rice

- 15 -

would testify to the facts contained within that affidavit if called at a hearing." Rice's affidavit stated that Rice was competent to testify if called as a witness and identified the substantive evidence he would testify to. Moreover, defendant attached the transcript of Rice's testimony at the hearing to reduce defendant's sentence to the *pro se* postconviction petition. Given the standard of review—meaning the allegations included in the postconviction petition and the attendant affidavits be taken as true—we cannot say counsel failed to make "crystal clear" that Rice would testify to the statements made in the affidavit. Rice's affidavit identified the substantive testimony he would give and made clear he was an available, competent witness. Defendant fails to delineate what counsel should have included in an amended postconviction petition to make it "crystal clear" that Rice would testify to the contents of the affidavit. Under these circumstances, we find defendant has not demonstrated counsel failed to make a necessary amendment to the postconviction petition.

¶ 59        Defendant also argues that postconviction counsel failed to demonstrate that Britt's affidavit was newly discovered. As discussed above, even if we assume that the evidence within Britt's affidavit was newly discovered, defendant has failed to demonstrate that the evidence was of such a conclusive nature that it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt.

¶ 60        Moreover, the record shows Britt was involved in the shooting as the driver of the vehicle that fled from the scene and successfully evaded police. Therefore, Britt would have risked incriminating himself if questioned about the incident. *People v. Prater*, 158 Ill. App. 3d 330, 337, 511 N.E.2d 842, 846-47 (1987) ("To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because

injurious disclosure could result." (Internal quotation marks omitted.)). Where Britt had a fifth amendment right against self-incrimination, no amount of diligence could have forced him to violate that right if he did not choose to do so. See *People v. Edwards*, 2012 IL 111711, ¶ 38, 969 N.E.2d 829. Given these facts, no amendment to the postconviction petition was necessary where the record demonstrated Britt's affidavit was newly discovered.

¶ 61                                    III. CONCLUSION

¶ 62          For the reasons stated, we affirm the trial court's judgment.

¶ 63          Affirmed.