EDEN GORDON et al., Infants by JOAN GORDON, Their Mother, Appellants, v MURRAY GORDON, Respondent.

Second Department, August 20, 1979

## APPEARANCES OF COUNSEL

*Schneider, Harris & Harris (Sondra I. Harris* of counsel), for appellants.

*Edelstein & Schneier (Saul Edelstein* on the brief), for respondent.

## OPINION OF THE COURT

RABIN, J. P.

■ ■ Plaintiff Joan Gordon, on behalf of her infant children, Eden and Alexander, commenced this action against her former husband, Murray Gordon, for an accounting and to recover certain sums of money which he withdrew from custodial bank accounts that were in the names of the infant children and that were established in accordance with the New York Uniform Gifts to Minors Act (UGMA) (EPTL 7-4.1 *et seq.).* There is no substantial dispute that the moneys, $20,000 in each of two accounts, were in fact deposited and subsequently withdrawn from UGMA custodial accounts. It is apparent that the funds originally came from defendant's father, Harry Gordon, the children's paternal grandfather. The instant appeal is from so much of an order as, upon renewal, adhered to a prior determination denying plaintiffs' motion for summary judgment on the ground that there is an issue of fact as to whether Harry Gordon ever intended to make a gift to his grandchildren. Two issues are raised: (1) whether the establishment of a custodial bank account in accordance with the provisions of the UGMA creates an irrebuttable presumption of donative intent; and (2) if the absence of donative intent may be proved, whether the defendant has come forth with a sufficient evidentiary showing to raise a material issue of fact as to defeat summary judgment. Both inquiries should be answered in the negative, and, accordingly, the plaintiffs should be granted summary judgment.

In 1971 the defendant's father, Harry Gordon, gave him $40,000, which sum was deposited into two equal certificate accounts. One account was opened on or about June 21, 1971 and was clearly denominated as a custodial account with defendant, Murray Gordon, as custodian under the UGMA for his daughter, Eden Gordon. The account card is signed by Harry Gordon as "donor". The second certificate account was initially opened as a joint account for Harry and Murray Gordon. However, on or about December 21, 1972, Harry's name was removed from the account and it was redenominated as Murray Gordon as custodian for Alexander Gordon under the UGMA.

On or about July 9, 1973 the two certificate accounts were renewed. The new account cards clearly state that they are custodian savings accounts under the UGMA and both account cards contain the signature of Harry Gordon in the space designated for the signature of the substitute custodian. The signature space for the donor is blank. On January 9, 1976, the initial expiration date of the certificate accounts, both accounts were closed and a single bank check, representing the $40,000 principal, plus remaining interest, was drawn to the order of Harry Gordon. It is noted that a prior withdrawal of accumulated interest had been made on each account.

The plaintiff Joan Gordon, on behalf of her children, now seeks the return of the money on the ground that a gift under the UGMA is irrevocable and that indefeasible legal title vested in the children when the accounts were opened. Defendant, Murray Gordon, argues that the money was his father's (i.e., Harry's) and that it was never intended that a gift be made to the children. Rather, the elderly and ailing Harry allegedly gave the money to his son, Murray, in a fiduciary capacity to hold for him as needed. It is urged that the money was deposited in the custodian accounts merely as a means of avoiding tax liability and that the funds were returned to Harry in 1976, at his request.

It is noted that Joan and Murray entered into a separation agreement in April, 1976, three months after the withdrawal

of the money. They were subsequently divorced, before the commencement of this suit.

The applicable provisions of the EPTL (New York Uniform Gifts to Minors Act) are as follows:

"7-4.1 Manner of making gift

"(a) An adult person may, during his lifetime, make a gift of a security, a life insurance policy or annuity contract or money to a person who is a minor on the date of the gift: * * *

"(3) If the subject of the gift is money, by paying or delivering it to a broker or a financial institution for credit to an account in the name of the donor, an adult member of the minor's family, a guardian of the minor or a trust company, followed, in substance, by the words: 'As custodian for . . . . . . . . . . . . under the New York Uniform Gifts to (name of minor) Minors Act.'* * *

"7-4.2 Effect of gift

"(a) A gift made in a manner prescribed by this part is irrevocable and conveys to the minor indefeasibly vested legal title to the security, life insurance policy, annuity contract or money given, but no guardian of the minor shall have any right, power, duty or authority with respect to the custodial property except as provided in the part."

UNIFORM GIFTS TO MINORS ACT

The original Uniform Gifts to Minors Act was proposed by the New York Stock Exchange to encourage the giving of securities to minors by providing "a simple, inexpensive method of permitting minors to own securities in a manner that would protect the minor and third parties dealing with property owned by the minor and would at the same time permit the donor the advantage of the gift tax exclusion" (Newman, The Uniform Gifts to Minors Act in New York and Other Jurisdictions—Tax Consequences, Possible Abuses, and Recommendations, 49 Cornell LQ 12, 32; see, also, Commissioners' Prefatory Note to Uniform Gifts to Minors Act, 8

Uniform Laws Ann 225, 226). The UGMA is essentially a procedural mechanism for making *inter vivos* gifts of securities or money to minors, and is designed to simplify the complex of legal and practical difficulties which otherwise accompany such a gift (e.g., trust agreements, restrictions on permissible investments, formal accountings, etc.). The more complex mechanisms are still available, but the UGMA, as a more convenient and standard procedure, is the preferred method, especially for relatively small gifts.

The structure of the UGMA is superficially analogous to a trust, with the custodian in the role of trustee. However, the minor obtains indefeasibly vested legal title to the property which is gifted in the manner prescribed by statute. In addition, once made, the gift is irrevocable. Thus, unlike a trust, Totten or otherwise, the donor retains no rights, legal or equitable, to the conveyed property. The statute (EPTL 7-4.1, subd [c]) expressly provides that having followed the prescribed procedure for making a gift, the donor's subsequent failure to promptly deliver the subject of the gift shall not affect the consummation of the gift.

The distinguishing characteristic of the UGMA is that it is primarily a means of declaring a gift and of identifying the incidents of such a declaration. The declaratory nature of the UGMA is indicated by EPTL 7-4.1 and 7-4.2. The former section is entitled "Manner of making gift" and identifies the procedure to be used in making a particular type of conveyance; i.e., "If the subject of the gift is * * * by" (EPTL 7-4.1, subd [a], pars 1-4). Similarly, section 7-4.2, entitled the "Effect of gift", is conditioned upon a gift having been made "in a manner prescribed by this part". It is evident that under the UGMA, as with any other declaration of an irrevocable *inter vivos* transfer, there must in fact be a gift.

■ The two basic elements of every *inter vivos* gift of personalty are donative intent and delivery of either the subject matter of the gift or of an instrument of gift. As noted, the UGMA expressly deals with the element of delivery by providing that such element shall be satisfied by following the procedures prescribed by the statute (see EPTL 7-4.1, subd [c]; cf. *Lippner v Lippner*, NYLJ, July 27, 1978, p 12, col 1). However, there is no such provision regarding the more fundamental element of donative intent. It must, therefore, be inferred that under the UGMA, as with all other mechanisms

for conveying personalty, the issue of donative intent is necessarily subject to rebuttal.

The opening of a bank account in the manner prescribed by the UGMA, is not fundamentally different from the opening of any other bank account in trust for another. In neither case may there be any absolute bar to the introduction of extrinsic evidence to show fraud or mistake, or to otherwise demonstrate a contrary intent. It is easy to imagine a situation where a person intends to bestow a gift upon one child, but not that child's sibling, and by some mistake, clerical or otherwise, the wrong name is inscribed upon the security or bank account. In such a situation there is no persuasive reason to depart from the traditional common-law rule that the donor, and in the event of his death, the intended donee, can compel the return of the property (5 Scott, Trusts, §§ 467, 467.2).

■ As a general proposition, the determination of donative intent is a prerequisite for sustaining any type of *inter vivos* gratuitous transfer. Although compliance with the procedures set forth by the UGMA is highly probative on the issue of intent, in appropriate circumstances extrinsic evidence may be introduced to rebut the prima facie showing afforded by the prescribed UGMA documentation (e.g., appropriately inscribed bank accounts). A similar result has been impliedly reached in California, where, in a matrimonial action, the court revoked the father's attempted gift of certain securities duly inscribed in accordance with the California UGMA to the parties' child, on the ground that the mother had not consented to such a gift *(Matter of Hopkins,* 74 Cal App 3d 591). The money which was used to purchase the securities came from a revocable trust account of which the parents were cotrustees. The import of this decision is that without the consent of the mother, there could be no finding of donative intent to make an irrevocable gift.

That portion of the UGMA which states that a gift made in the manner so prescribed is "irrevocable and conveys to the minor indefeasibly vested legal title to" the property (EPTL 7-4.2, subd [a]) does not suggest a different result. This language presupposes the affirmative resolution of the issue with which we are concerned, i.e., was there a gift in the first instance. The essential element of donative intent refers to the grantor's initial intent at the time of the conveyance. Thus, once a UGMA security is purchased, or a UGMA custodian bank

account is opened, the donor cannot change his mind and revoke the transfer. However, this is entirely different from allowing the voiding of a transfer because there never was the requisite donative intent. Similarly, the language referring to indefeasibly vested legal title has no relation to the making of a gift in the first instance and instead serves to insure that the transferred property will be freely alienable, as limited by the other provisions of the statute (EPTL 7-4.2).

■ The abstract determination that formal compliance with the provisions of the UGMA does not create an irrebuttable presumption of donative intent, does not mean that there is a material factual issue of intent in every case. Certainly, the documentary compliance with the statutory mechanisms is prima facie evidence that a gift was made and intended. In the instant case, the defendant has not set forth a sufficient evidentiary showing as to require a hearing on the issue of intent.

### SUMMARY JUDGMENT

As previously noted, when the custodian account for Eden was originally opened, grandfather Harry, who is now deceased, signed as donor. Above his signature, the account card clearly indicates that the account is being opened as a "Gift Transfer to Minor * * * under the New York Uniform Gifts to Minors Act" and that such gift, together with future earnings and additions thereto, is irrevocable. In 1973 when the custodian accounts for both children were renewed, Harry signed as a substitute custodian. This signature appears immediately above that portion of the card which evidences the initial gift. Even a casual glance would have alerted Harry, that he was making a gift to a minor.

To controvert this impressive documentary evidence of donative intent, there are only the conclusory allegations, contained in Murray's affidavit, that the accounts were opened upon the advice of a bank officer for tax purposes and that Harry never intended to part with the control and enjoyment of the money. However, these conclusory allegations are wholly insufficient to raise a triable issue of fact in light of the plaintiffs' strong documentary showing (cf. *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.*, 32 NY2d 285). Nor does the evidence that the money was initially paid to Harry support the defendant's position. Such payment demonstrates only that Harry may have attempted to revoke the transfer,

as if a Totten trust had been established. However, there is no viable inference of a tentative trust in the instant situation because Murray clearly opened the accounts as custodian and there is absolutely no indication that Harry had retained any control or direct access to the money. In the absence of such control, there can be no finding of a tentative trust. The only possible inference on the instant record is that a gift to the children was initially intended. That there may have been a subsequent change of intent, or even a concurrent misapprehension of law (as to the full legal consequences of a gift under the UGMA) is of no significance. Therefore the plaintiffs' motion for summary judgment should have been granted.

GULOTTA, MARTUSCELLO and MANGANO, JJ., concur.

Order of the Supreme Court, Nassau County, dated January 10, 1979, reversed insofar as appealed from, on the law, with $50 costs and disbursements, and, upon renewal, order dated October 27, 1978 vacated and plaintiffs' motion for summary judgment granted.