■ In the Matter of the Estate of GERALDINE C. LAURER, Deceased. DONALD C. LAURER, Respondent-Appellant; GERALD R. LAURER, Appellant-Respondent. — Decree unanimously reversed, without costs, and matter remitted to Monroe County Surrogate's Court. Memorandum: Geraldine Laurer died testate in

1978 owning personal property. By will executed in 1973, she left half her estate to her son Gerald, and half to her other son, Donald. The instant proceeding was commenced pursuant to SCPA 2103 to determine what items, if any, belonged to Geraldine Laurer at her death and what items she had conveyed, *inter vivos,* to Gerald Laurer. The dispute over ownership arose, in large measure, because Gerald and his wife and children resided in his parents' home. Gerald and Donald have appealed and cross-appealed, respectively, from the Surrogate's decision. Gerald raises only one issue on appeal: whether the Surrogate erred in valuing the estate at $77,000. We agree that this was erroneous. Initially we note that it was not necessary for the Surrogate to place a value on the estate, since the only question before him was which items belonged to the estate. More importantly, it was impossible for the Surrogate to value the estate because certain items had never been appraised, specifically the cottage furnishings and some items from the Seneca Parkway residence (such as the piano, mink and silver, etc.). Thus, the Surrogate's values of $10,000 for the cottage furnishings and $40,000 for the household furnishings are totally without support in the record. It follows of course that the Surrogate's finding that Donald's share of the estate should be $16,000 is equally speculative. We see no need at this time to place a value on the estate. The executor will do so, once it is determined what items belong to the estate. Donald's share, of course, will be one half of whatever the estate owns. We turn next to Donald's cross appeal, which raises two issues: (1) whether Gerald, owned a one-half interest in all furnishings as a result of a 1957 bill of sale signed by his father; and (2) whether there was sufficient evidence to establish that Geraldine had conveyed, by gift, various items to Gerald. The 1957 bill of sale did not convey any interest. By Gerald's own admission he did not see this document until after his father's death. The bill of sale dated May 2, 1957 and signed by Charles Laurer, purported to convey to Geraldine Laurer and Gerald Laurer, all the furnishings in the family residence and the cottage. In 1967 Charles delivered the bill of sale to his attorney, Joseph Kaufman, when Charles came in to sign a will. According to Kaufman, Charles stated that the bill of sale had never been delivered and that he did not want it delivered. As further evidence of Charles' intent, at the same time that he gave the bill of sale to Kaufman, he signed a will in which he declared that all household goods were in his wife's name. Kaufman was the only person in a position to know Charles' intent, and his testimony is clear: Charles did not intend the bill of sale to constitute a gift of household furnishings to Gerald. As for the alleged "gifts" of various items in the Seneca Parkway residence, such as a piano, clock and mink, we find the record insufficient to support a finding that gifts were actually made. Significantly, the only witness concerning the alleged gifts was Gerald and his testimony indicates that most of the gifts were to his wife and children, and that he was not even present at the time they were given. This testimony is insufficient to establish the critical element of intent (see *Gordon v Gordon,* 70 AD2d 86, 90). The one exception to this finding is the silver flatware which Gerald's parents gave to him and his wife as a wedding present. All the other contested items, including the piano, desk candelabra, clock, mink coat and cut glass (except for that acquired by Gerald's wife) belong to the estate. Lastly we find that the contents of the Sodus cottage belong to Gerald, rather than the estate. We credit Gerald's testimony that he bought the cottage furnished in 1970. Although the furnishings belonged to his mother and the cottage belonged to his father's estate, it was his mother with whom he bargained over the cottage's price. Moreover, his mother was the beneficiary of the trust to which the sale proceeds would go. Geraldine's "release of control" over the cottage furnishings, particularly in view of the passage of time, evidenced her intent to relinquish title *(Matter of Kennedy,* 36

AD2d 549). Thus the estate has sole title to all property except the cottage furnishings and the silver flatware, which are owned by Gerald Laurer. Donald Laurer will be entitled to one half the estate, whatever that sum proves to be. (Appeals from decree of Monroe County Surrogate's Court, Telesca, S. — determination of interest in personal property.) Present — Dillon, P.J., Cardamone, Doerr, Denman and Moule, JJ.