DIANE ELIZABETH HEATH *et al.*, Minors, by Pamela E. Heath, their Mother and next friend, Plaintiffs-Appellees, v. LARRY L. HEATH, Defendant-Appellant.

Second District   No. 2—85—0410

Opinion filed May 9, 1986.

James G. Groat, of Louis E. Neuendorf & Associates, of Sandwich, for appellant.

Lloyd J. Tyler, of Tyler, Solomon & Hughes, of Aurora, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Plaintiffs, Diane Elizabeth Heath and Stanley Lyle Heath, by Pamela E. Heath, their mother and next friend, filed a petition to remove defendant, Larry L. Heath, as custodian of certain bank accounts established under the Illinois Uniform Gifts to Minors Act (the Act) (Ill. Rev. Stat. 1983, ch. 110½, par. 201 *et seq.*). Pursuant to sections 7(f) and 8(a) of the Act, plaintiffs sought a citation to issue against defendant commanding him to appear before the circuit court of Kane County and to render an accounting regarding the custodial estates, the two bank accounts created under the Act. (Ill. Rev. Stat. 1983, ch. 110½, pars. 207(f), 208(a).) Additionally, plaintiffs sought the removal of defendant as custodian of the accounts and the appointment of a successor custodian. (Ill. Rev. Stat. 1983, ch. 110½, par. 207(e).) Subsequent to the citation proceeding, the trial court en-

tered an order in favor of plaintiffs. Defendant filed a timely notice of appeal.

At the citation proceeding conducted on January 7, 1985, defendant, testifying as an adverse witness, related that on or about March 31, 1983, he established two bank accounts at the Home Savings & Loan Association in Aurora. One account was opened in the name of Larry Lee Heath, as custodian for Stanley Lyle Heath, under the Act. In that account defendant deposited the sum of $10,000. The other account was opened in the name of Larry Lee Heath, as custodian for Diane Elizabeth Heath, under the Act. In this account defendant deposited the sum of $3,381.49.

In opening the two accounts defendant stated that he had signed signature cards but stated that he had merely signed the cards at the instruction of the bank. According to the defendant, the money used to establish the accounts came from defendant's father and constituted a loan which defendant was to return at the end of the year when his father retired. Defendant also stated that he did not understand the legal effect of signing the signature cards and that by establishing the accounts neither he nor his father intended to create a gift of money to the children.

Subsequent to the opening of the two bank accounts in March 1983, defendant made three withdrawals totaling $1,800 from the account of Diane Elizabeth Heath. At the citation proceeding defendant was questioned by plaintiffs' counsel regarding these withdrawals. Defendant pleaded the fifth amendment. The court directed defendant to answer. Counsel for defendant objected, arguing that defendant had the right to exercise his privilege not to incriminate himself. The court disagreed, explaining that on the basis of questions which preceded those which defendant refused to answer, defendant had waived any right to plead the fifth amendment regarding the withdrawals.

Defendant related that on August 10, 1984, he closed the account of Diane Elizabeth Heath withdrawing therefrom $3,988.74. Also on August 10, defendant closed the account of Stanley Lyle Heath, withdrawing therefrom $9,791.14. Defendant testified that with the monies withdrawn from these accounts he obtained a money draft, in the exact amount of the two checks, made payable to Arlene Heath, defendant's mother. Defendant explained that he had the money draft made payable to his mother, as his father from whom he had received the money was out of the country at the time.

Plaintiff moved to introduce plaintiffs' exhibits Nos. 1 through 5 into evidence. Exhibits 1 and 2 were the signature cards defendant signed in establishing the 1983 bank accounts for Stanley Lyle Heath

and Diane Elizabeth Heath. Plaintiffs' exhibits 3 and 4 were copies of two checks, one in the amount of $3,988.74 and the other in the amount of $9,791.14, issued by Home Savings & Loan Association to defendant when defendant closed the two accounts in question. Exhibit 5 consisted of three checks, totaling $1,800 drawn on the account established for Diane Elizabeth Heath. The exhibits were admitted into evidence over defendant's objection.

During defendant's testimony it was revealed that the monies used to establish the two accounts for the children were acquired from the proceeds of an account opened in 1980 at Aurora Federal Savings & Loan Association. Defendant stated that the account at Aurora Federal was a certificate of deposit in the name of one of the children with defendant and his wife as custodians of the account. The monies used to establish this account were acquired from defendant's father sometime in 1980 and constituted a loan to defendant and his wife. Defendant maintained that the same monies from his father were used to establish both the 1980 account and the subsequent 1983 accounts.

As the result of the January 7, 1985, citation proceeding, the trial court found that the documentary evidence presented during the proceeding was sufficient to constitute a *prima facie* showing that the accounts established at Home Savings & Loan Association were intended to be irrevocable gifts to the named minors under the Act (Ill. Rev. Stat. 1983, ch. 110½, par. 201 *et seq.*) and that defendant's testimony and evidence was insufficient to overcome plaintiffs' strong documentary showing. The court ordered that defendant be removed as custodian, that a successor custodian be appointed, and that, upon such appointment, defendant immediately deliver up the subject funds to the successor custodian. Additionally, the court denied defendant's motion to strike testimony which the court directed defendant to give following the invocation of defendant's fifth amendment privilege.

Defendant appeals from the court's order, raising two contentions of error: (1) that the trial court erred in determining that an irrevocable gift was created under the Act; and (2) that the trial court erred in ordering defendant to testify following the invocation of his fifth amendment privilege against self-incrimination.

■ Defendant first contends that the necessary donative intent for the establishment of a gift was lacking at the time he opened the two bank accounts in the names of his minor children under the Illinois Uniform Gifts to Minors Act. Thus, defendant argues, the trial court erred in concluding that establishment of the accounts constituted irrevocable gifts.

In the instant case, sections 2 and 3 of the Act are particularly relevant to a determination whether an irrevocable gift was created. These sections provide in part:

"An adult may, during his lifetime make or provide for a gift of custodial property to a person who is a minor on the date of the gift or distribution:

\* \* \*

(2) if the subject of the gift is money, by paying or delivering it to a broker or domestic financial institution for credit to an account in the name of the donor, another adult or a trust company, followed, in substance, by the words: 'as custodian for \* \* \* (name of minor) under the Illinois Uniform Gifts to Minors Act.'

\* \* \*

A gift made in a manner prescribed in this Act is irrevocable and conveys to the minor indefeasibly vested legal title to the custodial property given, but no guardian of the minor has any right, power, duty or authority with respect to the custodial property except as provided in this Act." Ill. Rev. Stat. 1983, ch. 110½, pars. 202(a)(2), 203(a).

The Act is designed to make an *inter vivos* gift to a minor in a relatively simplified manner. By conveying the gift in the manner presented by the Act, the minor obtains indefeasibly vested legal title to the property which is gifted, and once the gift is made, it is irrevocable. (Ill. Rev. Stat. 1983, ch. 110½, par. 203.) A valid *inter vivos* gift requires proof of donative intent and delivery of the subject matter. (*In re Marriage of Brown* (1982), 110 Ill. App. 3d 782, 784, 443 N.E.2d 11.) As noted in section 2 above, the Act expressly addresses the element of delivery by providing that such element shall be satisfied by following the procedures set forth in the statute. However, the Act contains no provision regarding the element of donative intent and that element is the one at issue in the case at bar.

From our research, we conclude that the courts of Illinois have not yet addressed the issue of whether documentary compliance with the Act creates a conclusive presumption of donative intent. Defendant has presented this court with three cases from other jurisdictions which have dealt with this issue, and we find the holdings reached therein both persuasive and applicable to the instant case.

All three cases, *Gordon v. Gordon* (1979), 70 A.D.2d 86, 419 N.Y.S.2d 684, *In re Marriage of Jacobs* (1982), 128 Cal. App. 3d 273, 180 Cal. Rptr. 234, and *Golden v. Golden* (Fla. App. 1983), 434 So. 2d 978, held that, although establishing a bank account in a minor's

name in compliance with the provisions of the Uniform Gifts to Minors Act is highly probative on the issue of donative intent, it did not create an irrebutable presumption of intent. Thus, documentary compliance with the statutory mechanisms of the Act (*e.g.*, appropriately inscribed bank accounts) constitutes *prima facie* evidence that a gift was made and intended. (*Gordon v. Gordon* (1979), 70 A.D.2d 86, 91-92, 419 N.Y.S.2d 684, 688.) But, in appropriate circumstances, extrinsic evidence may be introduced to rebut the *prima facie* showing provided by the prescribed documentation of the Act. 70 A.D.2d 86, 91-92, 419 N.Y.S.2d 684, 688; *Golden v. Golden* (Fla. App. 1983), 434 So. 2d 978.

In the instant case the documentary evidence, in particular, the account signature cards signed by the defendant, clearly constituted a *prima facie* showing that the bank accounts established at the Home Savings & Loan Association were intended to be irrevocable gifts to the named minors under the Act. At the citation proceeding, defendant admitted opening the accounts in the names of his children and signing the signature cards. However, defendant argues in this court that his testimony was sufficient to rebut this documentary showing of donative intent.

Throughout his testimony, defendant maintained that the monies used to open the accounts in question resulted from a loan to him from his father. According to the briefs defendant has submitted to this court, the monies were to be used for bills but were also to be repaid to defendant's father upon his retirement in 1985. However, if the funds were to be used for the payment of bills, it would seem illogical to deposit them in bank accounts established for the minors as opposed to depositing the funds in a checking account or in a regular savings account in defendant's name. If the purpose of establishing accounts in the children's names was to avoid taxes, this fact was never brought out during defendant's testimony. Moreover, this court's examination of the record reveals no testimony regarding the purpose of the loan or how the monies were to be used. Thus, defendant's contention in his reply brief that the funds were for the payment of bills is unsupported by the record.

Furthermore, defendant's testimony regarding the monies his father allegedly loaned him was contradictory, in some respects, with testimony given by defendant at a deposition. At the hearing defendant testified that he had originally borrowed the monies from his father in 1980. At that time he opened a certificate of deposit in the name of his minor son, with defendant and his wife as custodians. Defendant stated that, upon the maturity of the certificate, defendant

withdrew the monies and used these same funds to open the two accounts in question. Yet, defendant's depositional testimony indicated that he had repaid these funds to his father prior to the opening of the March 1983 accounts for the children.

Defendant maintains that his testimony at the hearing shows he was unaware of the legal effect the account signature cards acquired upon his signing of them. Defendant attempts to pass himself off as a mere "factory worker" with apparently little knowledge of such matters. However, it is a matter of common knowledge that one should always read any document before signing it. Moreover, even a casual glance at the signature cards would have warned defendant that he was making a gift to a minor. At the top of the signature cards it clearly states in capital letters "GIFT TRANSFERRED TO MINOR." On both sides of the signature cards it indicates that defendant is opening savings accounts for the children "as Custodian for" them under the Illinois Uniform Gifts to Minors Act. Additionally, directly above defendant's signature it states:

"This gift of money to the minor named, which gift shall be deemed to include all earnings thereon and any future earnings thereto, is irrevocable and is made in accordance with and to include all the provisions of the said Statute of this State as it is now or hereafter may be amended."

Underneath defendant's signature appear the words "Signature of Donor." This court finds defendant's claim of ignorance, regarding the legal effect of what he was signing, unworthy of belief.

Consequently, in our view, defendant's testimony regarding his alleged ignorance regarding the opening of the bank accounts in the names of his minor children was insufficient to rebut plaintiffs' strong documentary showing that defendant had created irrevocable gifts. Additionally, although defendant testified the monies used for the accounts in question constituted a loan from his father which had to be repaid, defendant offered no other evidence to substantiate this contention.

The burden was upon the defendant, as the one questioning the creation of a gift, to overcome the presumption of donative intent by clear, convincing, unequivocal, and unmistakable evidence. (*In re Estate of Wilson* (1980), 81 Ill. 2d 349, 357, 410 N.E.2d 23.) Given the nature of defendant's testimony which was at times unclear and somewhat contradictory, the testimony was insufficient to rebut the presumption of donative intent created by documentary compliance with the statutory mechanisms of the Illinois Uniform Gifts to Minors Act. In our opinion, the trial court was correct in concluding that ir-

revocable gifts were created at the time defendant opened the bank accounts in the names of the minors under the Illinois Uniform Gifts to Minors Act.

██ Defendant next contends that the trial court should not have compelled him to answer certain questions to which he pleaded the fifth amendment, as this constituted a violation of his constitutional privilege against self-incrimination.

The constitutions of the United States and the State of Illinois set forth that no person shall be compelled "in a criminal case" to give evidence against himself. (U.S. Const., amend. V; Ill. Const. 1970, art. I, sec. 10.) However, a party may claim the fifth amendment privilege in a civil as well as a criminal proceeding. (*People ex rel. Mathis v. Brown* (1976), 44 Ill. App. 3d 783, 787, 358 N.E.2d 1160.) The privilege does not exist simply because a witness alleges that testimony may be disclosed which may tend to incriminate the witness. (*People v. Anderson* (1973), 14 Ill. App. 3d 925, 930, 303 N.E.2d 793.) Rather, it is for the trial court to determine the propriety of invoking the fifth amendment privilege in any proceeding. (*In re Zisook* (1981), 88 Ill. 2d 321, 332, 430 N.E.2d 1037, *cert. denied* (1982), 457 U.S. 1134, 73 L. Ed. 2d 1352, 102 S. Ct. 2962; *People v. Thornton* (1983), 120 Ill. App. 3d 983, 986, 458 N.E.2d 1150), and it must be perfectly apparent under all of the circumstances that the answers cannot possibly have a tendency to incriminate the party claiming the privilege. (120 Ill. App. 3d 983, 987, 458 N.E.2d 1150.) Here, no danger of incrimination existed.

██ █ Prior to his invocation of his fifth amendment privilege, defendant had testified that he had established bank accounts in the names of the minor children under the Illinois Uniform Gifts to Minors Act, that he had made withdrawals from one of the accounts, that he had checks printed for the account of Diane Elizabeth Heath, and that he had disposed of the proceeds of both accounts. Having voluntarily testified as to these matters which could incriminate him, defendant waived any privilege against self-incrimination regarding other matters relating to the accounts. If a witness agrees to testify to one matter tending to incriminate himself, he must testify in all respects relating to that matter so far as material to the issues. (*People v. Nachowicz* (1930), 340 Ill. 480, 493, 172 N.E. 812.) Thus, we believe the trial court was correct both in concluding that through his prior testimony regarding the bank accounts defendant had waived his privilege against self-incrimination and in directing defendant to answer certain questions after defendant's invocation of his fifth amendment privilege.

Moreover, even if the court's act of directing the defendant to answer the disputed questions was shown to be error, this court would not reverse absent a showing of prejudice. (*Reeves v. Brno, Inc.* (1985), 138 Ill. App. 3d 861, 871, 486 N.E.2d 405.) Here, the record indicates that the defendant's answers were unnecessary to the court's determination, given the strong documentary evidence presented as well as defendant's other testimony regarding the accounts. Consequently, we conclude that it was unlikely that the error, if any, was prejudicial to the outcome below.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

REINHARD and STROUSE, JJ., concur.