**Suleyman GULMEN and Funda Gulmen, Petitioners/Appellants,**

v.

**Guner GULMEN, Respondent/Respondent.**

No. 66892.

Missouri Court of Appeals, Eastern District, Division Five.

Nov. 21, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 4, 1996.

Application to Transfer Denied Feb. 20, 1996.

John D. Dwyer, Jr., Biggs, Fickie & Dwyer, St. Louis, for appellants.

Stanley J. Goodkin, Clayton, for respondent.

CHARLES B. BLACKMAR, Senior Judge.

This appeal is from the ruling on post-decretal motions in the dissolution case of Suleyman Gulmen, husband and father, and Guner Gulmen, wife and mother. Funda Gulmen, the parties' adult daughter was allowed to intervene. The father sues on behalf of the parties' son, Tolga, born November 4, 1976. The father and the daughter seek accounting for the proceeds of two accounts with the brokerage firm of A.G. Edwards & Sons, one styled "Guner Gulmen, Custodian for Funda Gulmen under the UGTMA Missouri," and the other styled "Guner Gulmen, Custodian for Tolga Gulmen under the UGTMA Missouri." The accounts were established in 1987 and 1988.

Both parents had earned income in six figures at the time the decree of dissolution was entered in 1991. See *Gulmen v. Gulmen*, 851 S.W.2d 37 (Mo.App.1993). The court "reluctantly" granted legal custody of the children to the father and required the mother to pay child support. The decree also provided that the mother was to pay one half of the actual cost of post-secondary education for each child, for a maximum of eight semesters. It identified the parties' separate property, divided the marital property, and expressly provided that mother was to continue as custodian of the two accounts with Edwards described above, stating the value of the daughter's account at $26,640 and of the son's at $38,467. It also provided that the father was to remain as custodian of two similar accounts established by him, in which the stated balances were much smaller.

We need not delve deeply into the problems of visitation and collection following the entry of the decree, or into the other matters drawn into question in the post-decretal proceedings. The father sought, on behalf of the son, an accounting of the son's custodial account and the daughter sought, in an intervening petition, an accounting for her custodial account. Both appeal from the denial of the relief sought.

The mother testified at the hearing on the motions that representatives of Edwards told her that she could use the accounts as she saw fit. She also testified that nobody told her that there were any restrictions on the accounts, that there was no discussion about termination of the accounts, that she did not intend to make a gift to either of her children, and that there was no discussion with anyone at Edwards about the fact that she was making a gift. She denied filling out or signing the application forms for opening either account. She acknowledged her signature on backup withholding forms for each account, but said that the forms were blank at the time she signed them and did not then contain the designation, "Guner Gulmen Custodian for Funda M. Gulmen under Mo. Uniform Gifts to Minor Act," or a similar designation for the account for Tolga. She admitted receiving monthly statements for each account, each bearing a designation of the account as a custodial account, in the manner indicated above for the backup withholding certificates. She also, both before and after the entry of the decree, endorsed checks made payable to "Guner Gulmen, c/f Funda M. Gulmen under the Mo Unif Trans to Minors Act," and endorsed similar checks bearing the designation of Tolga's account.

The mother withdrew $24,731.55 from the daughter's account between July 6, 1990 and February 3, 1993, and said that she paid all of the funds to the father for the daughter's college education and expenses. She withdrew $11,285 from the account for the son between January 27 and February 3 of 1993. She used some of these funds to pay back child support and to secure the release of her automobile, which had been seized by the sheriff at the father's instance because of her failure to pay child support and tuition expenses. She said that she did not use any of the funds in either account for her personal

expenses. She testified at one point that she thought that she was entitled to use the accounts in any way she chose "for the benefit of the children," and elsewhere that she had earned the money and felt that she could use it as she saw fit.

The trial judge, who was not the judge who entered the decree of dissolution, denied the father's and the daughter's claims for accounting, making extensive findings. He indicated that he believed the mother's testimony and, in accordance with *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) we accept his judgment of credibility. He does not find, however, that no gift was intended. He states that "the Uniform Gift to Minors Act may have been involved in setting up the two accounts at A.G. Edwards," and that the mother "was not a sophisticated business person and was not told that she couldn't dispose of the accounts in the manner that same were disposed of." The court expressly directed that she remain as custodian for the son's account, which implicitly rejects any contention that no effective gift was made. He denied the prayer for accounting, finding that "all monies withdrawn by [mother] were properly expended by her on behalf of [son and daughter.]" We conclude that the initial decree of dissolution confirmed the status of the two accounts as custodial accounts under the Uniform Transfer to Minors Act, that neither the record nor the court's findings demonstrate a full and complete accounting, and that the case must be reversed and remanded for further proceedings.

Our General Assembly adopted the Missouri Uniform Transfers to Minors Act in 1985, replacing the Uniform Gifts to Minors Act then in effect. Both statutes have the purpose of facilitating inter vivos gifts to minors, unencumbered by restrictions on investments, formal accounting, and the like. Under § 404.087.2 RSMo 1986, the sometime use of "gifts" rather than "transfers" in describing the custodial arrangement is of no significance, and the provisions of the new statute apply.

The pertinent portions of the statute read as follows:

**404.011 Transfer of Property to a minor by transferring to a custodian, effect—power limitations**—Property may be transferred to a person, who is a minor on the date of the transfer, by transferring the property to a custodian for the minor under sections 404.005 to 404.094.

**404.014. Present transfer of property, effect**—A present transfer of property to a custodian for a minor ... is irrevocable and indefeasibly vests ownership of the property in the minor subject to the custodianship provided in sections 404.005 to 404.094 for the benefit of the minor....

. . . .

**404.047. Transfer of property to custodian, procedure, forms—receipt for delivery of property deemed a release**—1. The designation of a custodian and transfer of property to the custodian shall be made in the following manner:

. . . .

(2) If the subject of the custodianship is money or an unregistered security, by having it paid or delivered to a broker or financial institution for the account of the person designated custodian followed in substance by the words: "as custodian for .......... (name of minor) under the Missouri Transfer to Minors Law[.]"

**Sec. 404.051 Powers of custodian, limitation termination of custodianship, when, procedure degree of care required for custodial property.**

. . . .

2. The custodian may deliver, pay over to the minor for expenditure by the minor, or expend for the minor's benefit, so much of the custodial property as the custodian determines advisable for the use and benefit of the minor, without court order and without regard to the duty or ability of the custodian to the custodian's individual capacity or of any other person to support the minor, or any other income or property of the minor.

. . . .

4. Any delivery, payment or expenditure under subsections 2 and 3 of this section is in addition to, not in substitution for, and does not affect, the obligation of any person to support the minor.

5.(1) To the extent that the custodial property has not been expended, the custodian shall deliver the custodial property, in an appropriate manner, free of the custodianship, as follows:

(a) To the minor on attaining the age of twenty-one years....

Chapter 404 RSMo 1986.

■ The respondent mother seeks to justify the trial court's disposition by arguing that the burden is on the donee to establish a gift, and that the trial judge concluded that the father (on behalf of the son) and the daughter failed to sustain this burden. We do not so read the trial judge's findings. He expressly recognized the custodial designation, substantially in the form prescribed by the statute. Our courts have provided little authority about the governing statute, but consensus appears in decisions from other states and, in the spirit of § 404.081 RSMo 1986, and the concept of uniform laws, we are persuaded that these decisions are legally sound and should be followed. By these authorities the establishment of an account in statutory form establishes a *prima facie* showing of gift, without further evidence. *See Heath v. Heath*, 143 Ill.App.3d 390, 97 Ill.Dec. 615, 493 N.E.2d 97 (1986); *Gordon v. Gordon*, 70 A.D.2d 86, 419 N.Y.S.2d 684 (1979); *Golden v. Golden*, 434 So.2d 978 (Fla. Dist.Ct.App.1983). Even if the mother did not sign any written instrument establishing the accounts, her receipt of monthly statements designating the accounts as custodial over a period of years, her endorsement of checks designating the accounts as custodial, and the express recognition of the accounts in the decree of dissolution are sufficient to establish the *prima facie* case.

■ The cases just cited hold that the *prima facie* case can be rebutted by "clear and convincing" evidence that no gift was intended. The "clear and convincing" standard is addressed to the trial judge. *Estate of Oden*, 905 S.W.2d 914 (Mo.App.1995). It is appropriately applied in cases such as this one, in which there is a challenge to the apparent disposition of property. The sense of the cases is that the designation of an account as custodial is not to be set aside lightly. There is no indication as to whether or not the trial judge applied this standard to the present record, or as to where he considered the burden of proof to lie. Because of the special circumstances of this case, however, we find it unnecessary to pursue the matter further. The reason is that the law of the case was established in the initial decree of dissolution.

That decree expressly recognized the accounts in question as custodial accounts, and directed that the mother continue as custodian of these accounts. The court likewise recognized the father as custodian of two accounts established by him. The mother should not now be permitted to depart from this determination, which was an essential part of the decree. Had the mother's present contention that no gift was intended been a sound one, then the property in the accounts would necessarily constitute marital property because, by her admission, it was the product of her earnings. Any want of understanding on the part of the mother as to her rights and obligations regarding the accounts would be of no significance because she was represented by counsel in the dissolution proceedings and her counsel was responsible for explaining the terms of the decree and the significance of its several portions to her. By suffering the decree to be entered and not challenging it by motion or appeal, she necessarily recognized that the property in the two accounts was subject to the terms of the Missouri Uniform Transfer to Minors Act, and that her custodianship may be scrutinized in accordance with the provisions of that act. She should not be allowed, in the light of the decree, to set up any personal understanding she might have had to avoid compliance with her obligations under the governing statute.

■ There remains for consideration the trial judge's express finding that "all monies withdrawn by [mother] from said accounts and subsequently expended by [mother] were properly expended by her on behalf of [daughter] and [son]." If this finding was supported by the evidence and is legally sound, then sufficient accounting might have been afforded. The mother's testimony as to the use of the funds in the son's account to pay child support decreed against her and to

secure release of her car from a levy of execution under a support judgment raises questions under § 404.051.4 RSMo1986. There is also a question as to whether the payments out of the daughter's fund were for educational expenses which, under the decree, the mother was obliged to bear out of her own funds. The trial court, in framing the dissolution decree, necessarily knew of the funds available in the custodial accounts. Enough has been shown to require a detailed accounting for each withdrawal and each expenditure, under the statutory requirements, and particularly subsections 2 and 4 of § 404.051 RSMo1986. This accounting should proceed in the court below. It is not appropriate, on the present record, to dispose of the case finally in accordance with Rule 84.14. We express no opinion as to whether the present record requires any finding of violation of statutory duty as to any individual item. Those determinations should abide the accounting. The trial court may also determine, following the accounting, whether there are circumstances indicating that the mother should be replaced as custodian for the son.

The order overruling the motions for accounting is reversed and the case is remanded for accounting as indicated and for further proceedings consistent with this opinion. Costs of this appeal are assessed against the respondent mother.

CRANE, C.J., concurs.

SIMON, J., dissents in separate dissenting opinion.

SIMON, Judge, dissenting.

I respectfully dissent. The majority refers to the decree of dissolution as establishing the law of the case as to the custodial accounts. However, the decree provides in pertinent part:

A. [Mother] remains as custodian for Tolga on A.G. Edwards' Account—$38,467.00

B. [Mother] remains as custodian for Funda on A.G. Edwards' Account—$25,640.00

C. [Father] remains as custodian for Funda on A.G. Edwards' Account—$3,523.00

D. [Father] remains as custodian for Tolga on A.G. Edwards' Account—$5.84

Generally stated, the doctrine of the law of the case is that the former adjudication is the law of the case as to all questions directly raised and passed upon and is also the law of the case as to matters which arose prior to the first appeal and might have been raised thereon but were not. *Steen v. Colombo,* 799 S.W.2d 169, 174 [5, 6] (Mo.App.1990). However, the doctrine of the law of the case does not apply when the former ruling was palpably wrong, when there is a substantial difference in the evidence and the facts upon the two trials, or when injustice to the rights of the parties would be done by adhering to the first opinion. *Id.*

It is important to note that although the record on appeal contains the decree of dissolution, it does not contain the record of the dissolution proceeding. An appeal was filed from that action but was not directed to the custodial accounts. Furthermore, nothing in the decree establishes that the custodial accounts were set up in accordance with the Missouri Transfers to Minors Law. The fact that the decree of dissolution leaves mother and father as custodians on the accounts does not mandate that the accounts were set up in accordance with the Missouri Transfers to Minors Law. Thus, the dissolution proceeding does not establish the law of the case regarding the creation of the custodial accounts. *See Steen, supra.* Here, mother deposited her own money in her name as a custodian for her daughter and son, and this deposit, standing alone, does not establish an irrevocable trust during her lifetime. *See First National Bank of Mexico v. Munns,* 602 S.W.2d 910, 913 [1] (Mo.App.1980). In fact, it could be a tentative or Totten trust, revocable at will, until she dies or completes the gift in her lifetime by some unequivocal act or declaration, such as delivery of the property or notice to the beneficiary. *Id.*

In contrast, the Missouri Transfers to Minors Law is essentially a procedural mechanism for making inter vivos gifts of property or money to minors, and is designed to simplify the complex legal and practical difficulties which otherwise accompany such a gift

(i.e., trust agreements, restrictions on investments, formal accountings, etc.). A valid inter vivos gift requires proof of donative intent, delivery of the subject matter, and acceptance by the donee. *Chism v. Steffens,* 797 S.W.2d 553, 557 [1] (Mo.App.1990). The substance of the Missouri Transfers to Minors Law is analogous to a trust, with the custodian in the role of trustee. *See* § 404.049(1), *supra; see* § 404.049(5); *see* § 404.049(6). The minor obtains indefeasibly vested ownership of the property—subject to the custodianship provided in § 404.005 to § 404.094—which is transferred in accordance with the Missouri Transfers to Minors Law. § 404.014. Legal title of the property is vested in the custodial trustee, and beneficial ownership of the property is vested in the minor. § 404.049(2). Furthermore, once made, the transfer is irrevocable. § 404.014.

As noted in § 404.047(2), *supra,* the Missouri Transfers to Minors Law expressly addresses the element of delivery by providing that such element shall be satisfied by following the procedures set forth in the statute. However, the Missouri Transfers to Minors Law is silent regarding the element of donative intent.

The parties have not directed us to, nor has our research uncovered any Missouri cases addressing the issue of whether documentary compliance with the Missouri Transfers to Minors Law prerequisites creates a conclusive presumption of donative intent. However, we have found several cases from other jurisdictions which are informative.

In each case, *Heath by Heath v. Heath,* 143 Ill.App.3d 390, 97 Ill.Dec. 615, 493 N.E.2d 97 (1986); *Gordon v. Gordon* (1979), 70 A.D.2d 86, 419 N.Y.S.2d 684; and *Golden v. Golden,* 434 So.2d 978 (Fla.Dist.Ct.App. 1983), the court held that although establishing a bank account in a minor's name in compliance with the statutory provisions of the Uniform Gifts to Minors Act is highly probative on the issue of donative intent, it did not create an irrebuttable presumption of intent. In reviewing these cases, it is clear that the pertinent statutes regarding custodial accounts for minors are substantially similar to our own Missouri Transfers to Minors Law. Essentially, these courts concluded that documentary compliance with the statutory prerequisites of the Act (i.e., appropriately inscribed bank accounts) constitutes *prima facie* evidence that a gift was made and intended. *Gordon v. Gordon,* 70 A.D.2d at 91, 419 N.Y.S.2d at 688. But, in certain factual situations, extrinsic evidence may be introduced to rebut the *prima facie* showing provided by the prescribed documentation of the Act. *Heath by Heath v. Heath,* 97 Ill. Dec. at 618, 493 N.E.2d at 100 [2]; *Golden v. Golden,* 434 So.2d at 978. The burden is on the one questioning the creation of a gift to overcome the presumption of donative intent by clear and convincing evidence. *In Re Patterson's Estate,* 348 S.W.2d 6, 10 [3, 4] (Mo. banc 1961); *Heath by Heath v. Heath,* 97 Ill.Dec. at 619, 493 N.E.2d at 101 [3].

The intention to create a gift may be established by the circumstances surrounding the transfer including the testimony of the parties as to their intent at the time of transfer. *Warford v. Smoot,* 361 Mo. 879, 237 S.W.2d 184, 187 [5] (Mo. banc 1951). Furthermore, the conduct of the parties subsequent to the transfer may also be considered to show the intent of the transferor at the time of the transfer. *Id.*

In this action for breach of fiduciary duty, accounting, and recovery of custodial property, appellants' expert, Frank Weber (Weber), examined the custodial account statements and cancelled account checks. He testified that the two accounts were Uniform Gift to Minors Act accounts and that mother made withdrawals from each account. However, the record indicates Weber was not employed by A.G. Edwards and had no involvement in establishing the accounts. Further, during cross-examination of mother, she admitted she opened custodial accounts at A.G. Edwards for son and daughter, signed a Taxpayer's Backup Withholding Certificate for each custodial account, and received monthly statements for each account which designated the accounts as Missouri Uniform Gifts to Minors Act accounts. Arguably, these documents show compliance with the Missouri Transfers to Minors Law and constitute prima facie evidence that gifts were made and intended.

However, the record reflects that mother's evidence rebutting the prima facie showing was uncontroverted. She testified that she never saw the application forms creating the custodial accounts until after this cause of action was instituted, and that neither of these application forms bears her signature. Further, she testified that she signed the Taxpayer Backup Withholding Certificate in blank, and as a result, there was no indication that either account was established under the Missouri Uniform Gift to Minors Act. Mother testified that she never intended to make a gift of any monies into the custodial accounts. She also testified that she was told by A.G. Edwards' personnel that the two custodial accounts could be terminated whenever she saw fit to do so and that she was not restricted in the use of the funds in the accounts. Furthermore, mother testified that at no time did she and A.G. Edwards' personnel discuss that the placing of the funds in the custodial accounts would constitute or be deemed to cause her to give a gift to daughter or son. Finally, at no time was she told that the funds she deposited would be used in accordance with the Uniform Gift to Minors Act.

The trial court decides the weight and value to be given to the testimony of any witness. *Wynn v. Wynn,* 738 S.W.2d 915, 918 [1] (Mo.App.1987). The trial court believed mother's testimony that she did not intend to make a gift to son or daughter under the Missouri Transfers to Minors Law. As a result, the trial court found that although the Missouri Transfers to Minors Law may have been involved, mother did not intend either account to be a gift. From a review of the record the trial court's findings are supported by clear and convincing evidence. *See Heath, supra; see Golden, supra.*

Section 404.014 of the Missouri Transfers to Minors Law which states that a gift made in the manner so prescribed is "irrevocable and indefeasibly vests ownership of the property in the minor" does not suggest a different result. This language presupposes the affirmative resolution of the issue with which we are concerned, i.e., a gift in the first instance. The essential element of donative intent refers to the grantor's initial intent at the time of the conveyance. Thus, once a Missouri Transfers to Minors Law custodial bank account is established in conformity with the statute, the donor cannot change his mind and revoke the transfer. However, this is entirely different from allowing the voiding of a transfer because there never was the requisite donative intent. *Gordon v. Gordon,* 70 A.D.2d at 91–92, 419 N.Y.S.2d at 688.

As a result, I would affirm the judgment of the trial court.