[671 NYS2d 742]

PELL STREET NINETEEN CORPORATION et al., Appellants, v YUE ER LIU MAH et al., Respondents.

First Department, April 28, 1998

APPEARANCES OF COUNSEL

*Bruce H. Lederman* of counsel (*Lederman Abrahams Lederman & Zarett, L. L. P.,* attorneys), for appellants.

*Michel J. Landron* of counsel (*Robert W. Wong* on the brief; *Fong & Wong, P. C.,* attorneys), for respondents.

## OPINION OF THE COURT

SULLIVAN, J. P.

This appeal involves a dispute over the ownership of plaintiff Pell Street Nineteen Corporation (Pell), a closely held corporation that owns and operates two buildings in Chinatown. The individual plaintiffs Paul Mah (Paul) and Margaret Fern (Margaret), brother and sister, claim that they own 50 and 100 shares, respectively, of Pell's 150 authorized shares. Defendant Yue Er Liu Mah, their stepmother and executrix of the estate of their father, You Tong Mah, claims that he owned all of the shares of Pell at the time of his death in January 1997. The matter is before us on appeal from the denial of plaintiffs' motion for summary judgment.

Born in China in 1907, Mah entered the United States in 1936 with his first wife. The family lived frugally, in near poverty, but over the years accumulated savings, and eventually, in 1958, purchased the two small buildings that are the primary assets at issue herein. Mah took title to these properties in the name of Yee Suey Tong, the alias under which he entered the United States. Mah's first wife died in 1972, immediately prior to the events that give rise to this lawsuit.

Advised by his son-in-law that it would be advantageous to transfer title to the buildings to a corporation, Mah, in 1973, formed the plaintiff corporation. The certificate of incorporation, dated January 18, 1973 and filed with the Department of State on January 23, 1973, was prepared by Mah's attorney, Solomon Star, and signed by both Mah and Paul. It authorizes the issuance of 150 shares of common stock. On February 15, 1973, Mah executed a deed transferring Yee Suey Tong's ownership of the buildings to Pell. At the same time, Paul, as president, and Mah, as secretary, issued three stock certificates, numbers 1, 2 and 3 (the original certificates) in the names of Mah, Paul and Margaret, respectively, for 50 shares each. Mr. Star prepared the original certificates. For purposes of the disposition of this motion, plaintiffs concede that, over the years, Mah maintained the original stock certificates and corporate book in his home, which also served as Pell's office.

After its incorporation in 1973, Pell was run as a corporate entity, with Paul as its president and Mah its secretary. It maintained its own bank accounts and regularly filed corporate tax returns. In its first year of existence, it paid an equal dividend to Mah, Paul and Margaret, issuing each of them the appropriate Internal Revenue Service (IRS) forms, which were filed with the IRS. Pell thereafter retained its profits, investing them in publicly traded securities or depositing them in bank accounts, all maintained in the name of Pell.

On December 30, 1985, before his remarriage, Mah, with his attorney, Mr. Star, present, signed the stock power on the back of certificate number 1, directing the transfer of the 50 shares it represents to Margaret, and wrote the words, "canceled and void" across the front. Paul signed the stock power as witness. The transfer is embossed with Pell's corporate seal. A new certificate, number 4, signed by both Paul and Mah, was issued to Margaret, making her the owner of Mah's previously owned 50 shares. After this transfer, Mah returned to China and married defendant Yue Er Liu Mah, then in her early 30's and younger than both Paul and Margaret. In early 1986, copies of the stock power and canceled certificate number 1 were delivered to Citibank as part of the removal of Mah as a signatory for Pell's bank account.

On March 25, 1986, Mah signed and filed Federal and State gift tax returns for the tax year 1985, prepared by his attorney, Mr. Star, for the "Gift of 50 shares of common stock of [Pell] to [d]onor's daughter, [Margaret]. [Pell] is a N. Y. corp., having an office at 19 Pell Street, NY, NY 10013." The returns also state that Pell "has 3 stockholders and the gift represents a 1/3 interest in the issued stock". The return also indicates that Mah filed a gift tax return in March 1973. On the audit of the 1986 gift tax return, Mah settled the matter by agreeing to a higher valuation. He again, on IRS Form 890, acknowledged, "Gift of 50 shares of common stock of [Pell] * * * [Mah] possessed a 1/3 interest in closely held business."

In the fall of 1995, Mah had an argument over money with his son-in-law, Margaret's husband, that required police intervention. Immediately thereafter, Mah took the corporate book and stock certificates number 1, 2, 3 and 4 to a new attorney, William Ng King, who prepared and had Mah sign, with King as a witness, the minutes of a purported "Special Meeting of the Shareholders of Pell." The minutes recite, "At the special [m]eeting of the sole [s]hareholder, it was duly nominated, seconded and unanimously adopted that" Mah and

Yue Er Liu Mah be appointed the officers of the corporation and "that the earlier proposal to issue the capital stock of the corporation on February 15, 1973 and on December 30, 1985 be rejected, canceled, voided and of no force or effect, and that the capital stock be issued as follows:

| Stock Certificate # | Name | # of Shares |
|---|---|---|
| 5 | [Mah] | Fifty (50) |
| 6 | Yue Er Liu Mah | Fifty (50) |
| 7 | [Paul] | Fifty (50)" |

Consistent with the resolution, stock certificates number 5, 6 and 7 were issued, signed by Mah and Yue Er Liu Mah. Certificates number 1, 2 and 3 were marked "Canceled and Void." When Paul refused to side with him, Mah, on December 8, 1995, executed a purported consent of all shareholders, Mah, removing Paul from any role in the corporation. Mah then had his attorney notify the tenants of Pell's buildings to pay their rent directly to Mah.

This action against Mah* and his wife, Yue Er Liu Mah, was commenced in November 1995, the complaint asserting three causes of action, one for interference with a business relationship and seeking a declaration that Paul and Margaret are the owners of the shares of Pell and an injunction prohibiting Mah's interference with its operation, and the second and third alleging causes of action for unjust enrichment and conversion, which essentially seek an accounting of Pell's funds. During the pendency of plaintiffs' motion for a preliminary injunction, Mah and his wife arranged for the sale of certain stock previously registered in the name of Pell and allegedly converted the proceeds, approximately $120,000. In May of 1996, the IAS Court granted a preliminary injunction and Paul has managed the buildings ever since.

After the taking of depositions, plaintiffs filed a note of issue and sought a trial preference, which was granted. Mah died while the matter was awaiting trial. Since Mah's version of the salient events was now necessarily limited to his deposition testimony, which, in plaintiffs' view, did not establish a fact issue, plaintiffs accordingly moved for summary judgment. In opposition, defendants' attorney, in a lengthy affirmation based on Mah's deposition testimony, attempted to demonstrate the existence of a factual issue based on Mah's repeated statements that he never intended to give his children an interest

---

* Mah died during the pendency of the action and Yue Er Liu Mah, as executrix of his estate, was substituted for him after his death.

in Pell until his death. No affidavit based upon personal knowledge was submitted. Focusing on Mah's claim that he always maintained physical possession of the stock certificates, the IAS Court found a factual issue as to whether the gift was complete. Since Mah's continued possession of the certificates is legally irrelevant and the undisputed facts point, inexorably, to an inter vivos gift of the stock, we reverse and grant plaintiffs summary judgment.

It is well settled that conclusory allegations as to the lack of donative intent, asserted in the face of a documentary showing to the contrary, are insufficient to defeat summary judgment. (*Gordon v Gordon,* 70 AD2d 86, 92, *affd* 52 NY2d 773; *see, also, Salrex Invs. v Slavin & Sons,* 214 AD2d 399, 400, *lv dismissed* 87 NY2d 918.) Here, the documentary evidence, consisting of Pell's certificate of incorporation in which Paul, along with his father, acted as an incorporator; the 1973 stock certificates issued in an equal amount to Mah, to Paul and his sister, Margaret; the 1973 issuance of equal dividends to the three shareholders and the filing of the appropriate IRS forms; the 1985 cancellation of certificate number 1 in Mah's name and issuance of certificate number 4 by which Paul and Margaret achieved complete ownership of Pell; and the filing of gift tax returns and audit responses in 1986 and 1988, clearly establishes a gift.

This showing is bolstered by a history of filed corporate tax returns showing that Paul and Margaret have been the holders of two thirds of Pell's stock since the initial issuance of stock at the time of its incorporation in 1973 and, since 1985, 100% of the stock. In 1986, after Mah transferred his one-third stock interest to Margaret, copies of the transfer documents were delivered to Citibank in order to effect a change in signatories on Pell's bank account. In his deposition, Mah admitted that, under the supervision of his attorney, he signed certificates number 1, 2, 3 and 4. His statement that he did not "know any English" is belied by the extensive documentation showing that he conducted his affairs in English when he so chose, his wartime service in the United States Army, his execution of lengthy affidavits in English, his signature on a Corporate Account Resolution permitting the sale of IBM and AT&T stock and his execution, on January 19, 1996, of a will, written in the English language and signed in English script, which Yue Er Liu Mah offered for probate, thereby tacitly conceding that Mah understood and could communicate in English.

Furthermore, Mah, for the 10 years after he divested himself of any ownership in Pell by conveying his 50 shares to Margaret, did nothing to demonstrate, objectively, an intent, as he was to claim in this lawsuit, to maintain any control over or ownership of Pell. Indeed, although he signed the corporate leases and tax returns from 1973 to 1985, it was Paul who, after 1985, signed all corporate documents, leases and tax returns. Mah never took any action consistent with his claim of a reserved intent to maintain exclusive ownership of Pell until an admitted fight with Margaret's husband in 1995. Under such circumstances, "[t]he only possible inference * * * is that a gift to the children was initially intended [and t]hat there may have been a subsequent change of intent." (*Gordon v Gordon, supra,* 70 AD2d, at 93.) Furthermore, self-serving generalized claims of having signed documents for "tax purposes" and without any intent to accord them legal effect, without more, have been uniformly rejected when offered in opposition to summary judgment motions. (*See, e.g., supra,* at 92; *Salrex Invs. v Slavin & Sons, supra,* 214 AD2d, at 400.)

In denying summary judgment, the IAS Court found a question of fact based on Mah's claim that he always maintained physical custody of the original stock certificates and certificate number 4. In so ruling, the court failed to recognize that physical delivery of a stock certificate is not a rigid requirement; constructive or symbolic delivery may suffice. (*See, Matter of Szabo,* 10 NY2d 94; *Matter of Carroll,* 100 AD2d 337; *Matter of Monks,* 171 Misc 2d 514; *see also,* 62 NY Jur 2d, Gifts, § 24.)

Here, the stock transfers at issue were supervised by Mah's attorney; Paul, as president, and Mah, as secretary, signed stock certificates number 1, 2, 3 and 4, thereby executing a valid corporate act. Thus, that Mah may have later obtained possession of the certificates does not affect the legality of the issuance of the stock. The gift tax and corporate tax returns filed by Mah after the 1973 and 1985 transfers clearly reflect the gift of stock to his children. Mr. Star, Mah's attorney, who functioned as Pell's transfer agent in the transactions at issue, prepared these returns. Thus, the corporate records reflected Mah's gift to Paul and Margaret. Even if, as he claims, Mah retained the stock certificates in his "secret place" at his apartment, which served as Pell's office, there was, as a matter of law, a constructive delivery of the stock shares to support a finding of a gift. That Mah had an attorney write "cancelled" across the face of the certificates in 1995, after the fight with his son-in-law, is legally irrelevant. Similarly, the purported

corporate resolutions prepared in 1995 transferring Margaret's share to Mah's second wife and Paul are without legal meaning and inconsistent with Mah's claim that until death, he owned all of Pell's stock.

Inasmuch as defendants' counterclaims alleging conversion of Pell's rental income and share certificates of stock in publicly traded corporations are all premised on Mah's sole ownership of Pell, they are meritless and should be dismissed.

Accordingly, the order of the Supreme Court, New York County (Diane Lebedeff, J.), entered November 5, 1997, which denied plaintiffs' motion for summary judgment, should be reversed, on the law, with costs and disbursements, the motion granted, the counterclaims dismissed, a declaration made that Paul Mah and Margaret Fern are the sole shareholders of Pell Street Nineteen Corporation and the matter remanded for an accounting by defendants.

ROSENBERGER, NARDELLI, RUBIN and SAXE, JJ., concur.

Order, Supreme Court, New York County, entered November 5, 1997, reversed, on the law, with costs and disbursements, plaintiffs' motion for summary judgment granted, the counterclaims dismissed, a declaration made that Paul Mah and Margaret Fern are the sole shareholders of Pell Street Nineteen Corporation and the matter remanded for an accounting by defendants.